410 A.2d 1282

**Anna Marie CAPAN, Administratrix of the Estate of Frank M. Capan, Deceased, Appellant,**

v.

**DIVINE PROVIDENCE HOSPITAL, a corporation, Raimund Rueger, M.D., J. R. Friday, M.D., G. Ray Vilsack, M.D., Robert Clevenger, M.D., Alfred R. Price, M.D., Individuals, Defendants,**

v.

**Philip POLLICE, M.D.**

Superior Court of Pennsylvania.

Sept. 19, 1979.

Petition for Allowance of Appeal Granted Jan. 31, 1980.

Reargument Denied Jan. 3, 1980.

130

Thomas W. Trimm, Pittsburgh, for appellant.

David H. Trushel, Pittsburgh, for appellee Vilsack, M.D.

George M. Weis, Pittsburgh, for appellee Divine Providence Hospital, a corporation.

Harry J. Zimmer, Pittsburgh, did not file a brief on behalf of appellees Rueger, M.D. and Clevenger, M.D.

Ronald H. Heck, Pittsburgh, for appellee Friday, M.D.

Bruce R. Martin, Pittsburgh, for appellee Pollice, M.D.

Before CERCONE, WIEAND and HOFFMAN, JJ.

CERCONE, President Judge:

This is an appeal from the order of the Court of Common Pleas of Allegheny County denying appellant's motions for new trial and motion to take off non-suits in wrongful death and survival actions. We affirm the decision of the lower court.

The decedent, Frank Capan, was admitted to Divine Providence Hospital on November 17, 1972 for treatment of a nosebleed. Appellee, Dr. Raimund Rueger, was the first physician to treat Frank. He packed his nose in gauze, prescribed some medication, and had Frank remain in the hospital. On November 19, Frank developed a rapid heart-

beat and was transferred to the Intensive Care Unit. It was during this time that Frank went into delirium tremens, a condition arising due to the lack of alcohol, whereby he became violent and disturbed other patients. The remainder of the appellees, Doctors Friday, Vilsack, Clevenger, Price, and Pollice, treated Frank during this time, and several central nervous system depressants were prescribed in order to calm Frank's symptoms and rapid heartbeat.

On November 23, Frank became so boisterous that he was removed from the Intensive Care Unit and placed in his own room. The medical records for this day read that Frank was "again wild, screaming," and that he had a "poor day, combative." Later that day the medical records reflect that Frank became "very combative. Full cloth restraints, . . belligerent, out of restraints, [and] unable to keep restraints on." During the afternoon of November 23, Dr. Pollice was called to Frank's room to help the nursing staff control him. Dr. Pollice was in the hospital at this time serving as the doctor "on call" to answer any emergencies that occurred in the hospital. Frank was treated with a series of drugs in an attempt to calm his actions. When Dr. Pollice left Frank at approximately 7:00 P.M., he seemed calmer and responding to the medication.

Dr. Pollice left the hospital at 7:40 P.M. and went to his sister's home for Thanksgiving dinner. Shortly after arriving there, he was called back to the hospital where the cardiopulmonary resuscitation team began working on Frank. Dr. Pollice aided in the resuscitation efforts, but Frank was declared dead at approximately 9:30 P.M. The cause of death written on the death certificate was cardiac arrythmia and alcoholic cardiomyopathy.

Appellant, Anna Capan, the wife, and administratrix of the estate of Frank Capan, brought wrongful death and survival actions against Divine Providence Hospital, and Doctors Rueger, Friday, Vilsack, Clevenger, and Price. By agreement of the parties, Dr. Alfred R. Price was dropped from the suit. Doctors Rueger and Clevenger then joined Dr. Philip Pollice as an additional defendant. At the close

of the pleadings, Dr. Pollice's motion for judgment on the pleadings was granted as to the wrongful death action. The case then went to trial for nine days on the survival action against Dr. Pollice, and on both the wrongful death and survival actions against the hospital and the other named physicians. At the close of the plaintiff's case on liability, non-suits were granted in favor of all the doctors except Doctor Pollice. At the close of the trial, the jury was given special interrogatories. The first question was, "Was Dr. Philip Pollice in treating the decedent Frank M. Capan acting as an employee of Divine Providence Hospital? After you have answered that question, you will proceed to the second question. If your answer to number one was 'no,' you do not proceed further." The jury returned the verdict with a negative answer to this first question. The court then molded the verdict to read, "for the defendant Divine Providence Hospital and the additional defendant Philip Pollice, M.D. and against the plaintiff."

Appellant filed a Motion to Take Off Non-Suit consisting of 18 allegations of error, and a Motion for New Trial alleging 42 errors by the lower court. Appellant's motions were denied and the appeal is now before us in which appellant raises eleven issues.

## I.

First, appellant raises the question of whether the lower court erred in refusing to charge the jury that Divine Providence Hospital could be found liable for the acts of negligence allegedly committed by Dr. Pollice on the theory of vicarious liability, beyond the traditional test of master-servant, the latter upon which a charge was given. In addition, appellant argues the court should have charged the jury on the theories espoused in the Restatement of Torts, 2d §§ 429, 416, 427 and 323 that hold an employer of an independent contractor liable for the negligent acts of that independent contractor. Although appellant poses an interesting argument and devotes a large part of her brief to it, we find this issue was not properly preserved for appellate

review. Appellant's counsel did not object to the judge's refusal to charge on the above-mentioned theories, nor did counsel specifically except to the charge after the judge completed it. To the contrary, with respect to the charge, appellant's trial attorney stated that he had "Nothing, your Honor. I have no additions or corrections, your Honor." On the other hand, counsel for the other parties in the suit made specific exceptions to the charge on the record.

Under the law in effect at the time of the trial in this case, when counsel requested points for charge, a general exception to the charge as a whole would then have preserved his objections to the points for charge that were refused by the trial judge. Act of May 11, 1911, P.L. 279, § 2; May 24, 1923, P.L. 439, § 1, 12 P.S. § 1197 (1953); 1 Goodrich Amram 2d § 277(b):2 (1977). The statute then in effect specifically provided in pertinent part that:

> "Such [general exception] shall operate and be construed to be an exception to the charge as a whole and to each and every part thereof, and to the answer of the court to each and every point where requests for charge are filed . . . " (Emphasis added) 12 P.S. § 1197.

However, in the instant case, counsel did not specifically or generally except to the charge at any time. On the contrary, he stated his approval of it as given by the court. Based on the above-quoted law, counsel did not preserve this objection for our appellate review and we do not reach the merits. *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974); Cf. *Broxie v. Household Finance Co.*, 472 Pa. 373, 372 A.2d 741 (1977); *Strickler v. United Elevator Co., Inc.*, 257 Pa.Super. 542, 549, 391 A.2d 614, 617 (1978).

## II.

Second, appellant raises the issue of whether the lower court erred in granting a nonsuit as to all defendants except Divine Providence Hospital and additional-defendant, Dr. Pollice, prior to the conclusion of the trial. Initially we note that appellant does not argue that the nonsuits were improperly granted on a substantive basis, but only argues

the procedural aspect that Pa.R.C.P. 2231(h)(2) requires that a nonsuit may not be entered prior to the conclusion of the trial unless it is to *all* of the defendants.[1] However, this argument overlooks the further provisions in the Rules that say:

> "(d) When a plaintiff joins two or more defendants and the evidence does not justify a recovery against all of them, the court shall enter a nonsuit or direct a verdict in favor of any defendant not shown to be liable either jointly, severally or separately, and the action shall continue and determine which of the remaining defendants are jointly, severally or separately liable with the same effect as though the defendants found to be liable were the only ones joined. As in other cases the court may enter judgment notwithstanding the verdict in favor of or against any of such defendants." Pa.R.C.P. 2232(d).[2]

This rule clearly states that where there is *no* evidence to support an action against one defendant, that action may be terminated by a nonsuit. The general rule is that a nonsuit may be entered only at the close of the plaintiff's case. *F. W. Wise Co., Inc. v. Beech Creek R. R. Co.*, 437 Pa. 389, 263 A.2d 313 (1970); 6 Standard Pa.Prac. 362–367 (1960). When applying these rules to the trial judge's actions in the case before us, we conclude that, where there was no prima facie case made out against the doctors who were granted the

---

1. Pa.R.C.P. 2231(h)(2) reads:

 "(2) unless a compulsory nonsuit is entered against all plaintiffs as to all defendants, the court upon the conclusion of the trial as to all parties, but not before, may direct a verdict in favor of each defendant as to whom the evidence, regardless of the party by whom offered, does not warrant a finding by the jury that such defendant is liable jointly, severally or separately to any plaintiff." *But see Brazel v. Buchanan*, 404 Pa. 188, 171 A.2d 151 (1961).

2. See Rule 2231(d) which reads:

 "(d) Except as otherwise provided by these rules, the joinder of parties in any action shall not affect the procedural rights which each party would have if suing or sued separately, and the verdicts and judgments entered therein shall be joint, several or separate according to the nature of the right or liability therein determined."

nonsuits, the court properly entered the nonsuits in compliance with Pa.R.C.P. 2232(d) and there was no error.

### III.

The remaining eight issues appellant raises deal with questions of evidence. We will briefly comment on them, but conclude that none of these issues has merit.

 The first of these evidentiary issues is whether the lower court erred in not permitting appellant's expert to give an opinion as to whether the care given to the decedent by the nursing staff at Divine Providence was in accordance with acceptable hospital practices. The lower court disallowed this testimony because the doctor, who was an expert but mainly affiliated with hospitals out of state, had not established himself "as an expert in Pennsylvania hospital care." Also, it is established in Pennsylvania law that an expert opinion may only be given if it is based on facts in evidence. *Collins v. Hand*, 431 Pa. 378, 246 A.2d 398 (1968). The hypothetical question posed by appellant's counsel included facts involving the nursing staff at the hospital that had not been supported by evidence. Counsels for the defendants objected to the question and their objections were correctly sustained due to the lack of evidence in the record concerning how or what the nursing staff did or failed to do during the last hours of the decedent's life. In *Collins v. Hand*, our Supreme Court stated that "[a]n expert cannot base his opinion upon facts which are not warranted by the record. No matter how skilled or experienced the witness may be, he will not be permitted to guess or to state a judgment based on mere conjecture." *Id.*, 431 Pa. at 390, 246 A.2d at 404. Under this rule, appellant's expert could not give an opinion based on the conjecture of what the nurses may or may not have done where the record did not establish their actions. There was no error.

 Next, appellant argues it was error for the lower court to refuse to admit the testimony of appellant regarding who obtained the services of Dr. Pollice in the care of her deceased husband. Appellant attempted to testify that

she did not select any of the physicians who cared for her late husband, but that they were supplied by the hospital. This evidence would support her theory of ostensible responsibility for the death of Frank on the part of the hospital. However, the lower court sustained an objection to this line of questioning on the basis that appellant was not present when the decedent was treated. The record states:

"The Court: You have to lay a foundation. You just can't ask the bare questions. You have to lay the foundation that she was involved when he went for the treatment and had some knowledge of it before you can ask her. Mr. Weisman: (Plaintiff's counsel). She actually was not involved when he went for treatment. I think the testimony clearly indicates he went to the hospital for treatment on his own with other people that particular evening.

The Court: Then you are going to have to get those other people. She doesn't know."

On the basis of this statement that appellant was *not* present when her husband was treated, it is evident that any information she might have concerning that treatment and the selection of doctors would have been inadmissible hearsay. *See Andrews v. Jackson,* 211 Pa.Super. 166, 235 A.2d 452 (1967). The lower court did not err in sustaining the objection.

■ Appellant argues further that the lower court erred in sustaining objections to two questions trial counsel attempted to ask defendant, Dr. Rueger. The first question objected to was, "What is the policy at Divine Providence Hospital that was in effect in 1972 when you called in a doctor such as Dr. Vilsack for consultation?" Counsel for one of the defendants objected on the ground that the question was immaterial and irrelevant and the court sustained the objection. Appellant now argues that the question was relevant since it was intended to eliminate the possibility that Dr. Pollice was supplied by anyone but the hospital. The second question to which an objection was sustained was, "the other doctors that took care of him when

you were not in the hospital were the doctors that were provided by Divine Providence Hospital, is that correct?" Regardless of the status of these questions and the rulings thereon, appellant's counsel was able to elicit the desired information through further questioning. Therefore, even if error had occurred, there was no prejudice to appellant and the error would be harmless. *Warren v. Mosites Construction Co.,* 253 Pa.Super. 395, 385 A.2d 397 (1978); *Kolb v. Hess,* 227 Pa.Super. 603, 323 A.2d 217 (1974).

■ Appellant argues the trial judge erred in allowing a line of questioning of the mortality rate of patients with acute delirium tremens complicated by a head injury. The argument is that there was no evidence of a head injury and, therefore, this line of questioning was not supported by the evidence. To the contrary, however, there is testimony of Dr. Pollice who observed the decedent pounding his head against the bed post repeatedly. Since there was testimony to support the possibility of a head injury, the line of questioning permitted was correct.

■ Appellant's next two arguments are that the lower court erred in allowing the pathologist, Dr. Yoon C. Kim, and defendant, Dr. J. R. Friday, to testify on cross-examination to facts that were outside the scope of the direct examination and tended to prove the primary defense of the defendant's, i. e., the severe alcoholic state of the decedent. In the first instance involving Dr. Kim, the trial judge stated that the testimony elicited would be limited to the facts from the autopsy report from which Dr. Kim had testified on direct. Rulings on evidence are within the discretion of the trial judge and will not be reversed absent a manifest abuse of that discretion. *Lewis v. Mellor,* 259 Pa.Super. 509, 515, 393 A.2d 941, 944 (1978); *Radogna v. Hester,* 255 Pa.Super. 517, 388 A.2d 1087 (1978). There was no abuse of that discretion where the testimony was so limited. The same holds true for the second instance involving Dr. Friday. His mention of a jaundiced condition of the deceased based on drugs that he received could not be considered reversible error upon which a new trial could be

based. The testimony was based on the facts brought out on direct examination and there was no error in the ruling.

Appellant continues his argument by alleging it was error to refuse to allow Dr. Pollice to testify concerning the autopsy report. The trial court sustained an objection to this evidence on the ground that Dr. Pollice is an anesthesiologist and *not* a pathologist. Dr. Kim, the pathologist who performed the autopsy, had already testified to the findings in the report as the expert in that field. The trial judge correctly sustained the objection to Dr. Pollice, an anesthesiologist, testifying to that same matter when it was outside of his specialization and competency to testify.

Appellant's next objection is that the court erred in disallowing testimony of the decedent's son regarding the son's observations of his father's work habits. This argument was no merit since the lower court sustained defendant's objection and appellant's trial counsel then withdrew the question.

Finally, appellant contends it was error for the trial judge to refuse to permit appellant's economist to use standard life expectancy tables and future earnings on the basis that there was evidence that decedent suffered from alcoholism and morphological changes. Once again, this argument is without merit. From the discussion on the record, the trial court explained its position that the economist could not testify concerning the life expectancy tables where the evidence included testimony that the decedent was a chronic alcoholic. The hypothetical question posed to the economist did not include that fact, and, after a discussion off the record, appellant's counsel dismissed the witness. As was quoted before, an expert cannot give an opinion to facts not within the record. *Collins v. Hand,* supra. Likewise, he cannot give an opinion concerning a hypothetical question where material facts have been omitted. The court correctly sustained the objections on this question.

Judgment affirmed.

WIEAND and HOFFMAN, JJ., concur in the result.