Aline Richardson, Adm. of the Estate of Roy A. Richardson, Deceased v. Eugene LaBuz, M.D. et al. Hazleton State General Hospital et al., Appellants.

Aline Richardson, Adm. of the Estate of Roy A. Richardson, Deceased, v. Eugene LaBuz, M.D. et al. Eugene LaBuz, M.D., Appellant.

Argued December 7, 1983, before Judges CRAIG, DOYLE and BLATT, sitting as a panel of three.

438

*Randall G. Gale,* Deputy Attorney General, with him *Mark E. Garber, Jr.,* Deputy Attorney General, *David F. Snyder,* Deputy Attorney General, and *Le-Roy S. Zimmerman,* Attorney General, for appellants, Hazleton State General Hospital and Department of Public Welfare.

*Paul A. Barrett, Nogi, O'Malley, Harris & Schneider, P.C.,* for appellant, Eugene LaBuz, M.D.

*John R. Lenahan, Jr., Lenahan & Dempsey,* for appellant, Victor Greco, M.D.

*Joseph A. Quinn, Jr.,* with him *Neil L. Conway, Hourigan, Kluger & Spohrer Associates,* of counsel, *Daniel I. Murphy, Stradley, Ronon, Stevens & Young,* for appellee, Aline Richardson, Administratrix of the Estate of Roy A. Richardson, Deceased.

Opinion by Judge Craig, April 10, 1984:

In these two consolidated cases, the Commonwealth's Hazleton State General Hospital, the Pennsylvania Department of Public Welfare and Dr. Eugene LaBuz appeal from an order of the Court of Common Pleas of Luzerne County, denying their motions for a new trial in a medical malpractice case, which had resulted in a jury verdict in favor of the plaintiff for $1,500,000, plus delay damages.

## History

On the morning of May 2, 1977, Roy Richardson, plaintiff's thirty-one year old husband, was injured in an auto accident on Interstate 80 in Pennsylvania. He arrived at the emergency room at Hazleton State General Hospital at approximately 3:50 a.m. The emergency room nurse testified that Richardson was conscious and complaining of chest pain and breathing difficulty, which progressively worsened while he remained in the emergency room. The nurse immediately summoned Dr. Martyak, the emergency room physician then on duty, who examined the patient and ordered x-rays. Dr. Martyak then prepared to leave the hospital to make a house call, and contacted Dr. LaBuz, the general surgeon on call, to attend to Richardson. Dr. LaBuz read and admittedly misinterpreted Richardson's x-rays, failing to diagnose a progressive pneumothorax condition caused by multiple fractured ribs and a punctured lung, which eventually resulted in complete respiratory collapse and the death of Roy Richardson.

After reading the x-rays, Dr. LaBuz telephoned Dr. Greco, a thoracic surgeon, and gave him a very brief account of Richardson's injuries. Dr. LaBuz told Dr. Greco that the patient was "stable," and Dr. Greco said he would be "right down." After Dr. La-

Buz moved Richardson to an ordinary hospital room, he left the hospital. In the meantime, Dr. Greco had responded to another emergency call at a different hospital, and did not arrive at Hazleton State General until after Richardson died at 6:35 a.m.

Aline Richardson flew to Pennsylvania from her home in St. Maarten, the Netherland Antilles, the following day to transport her husband's body home. No one at the hospital discussed the cause of her husband's death with Mrs. Richardson, nor had anyone performed an autopsy.

Not until one year later did Mrs. Richardson begin to look into the details surrounding her husband's death. She had the body exhumed, arranged for an autopsy, and reviewed the medical records from her husband's brief stay at Hazleton State General. Shortly after completing analysis of this data, Mrs. Richardson filed suit on April 26, 1979, charging the hospital and Drs. LaBuz and Greco with medical malpractice in a wrongful death and survival action.

The uncontradicted expert testimony established, and Dr. LuBuz admitted, that he provided Richardson with inadequate medical care, that Richardson's injuries were otherwise survivable, and that LaBuz's malpractice was a contributing factor to Richardson's death. The evidence further established that Dr. Martyak, an employee of the hospital, was negligent in abandoning the patient, and that the hospital, owned and operated by the Commonwealth, was negligent in staffing its emergency room with unqualified personnel, and in failing to follow its own guidelines for operation of the emergency room and periodic personnel review.

At the close of the plaintiff's case, the court granted Dr. Greco's motion for compulsory nonsuit

because none of the parties offered any expert testimony regarding negligence on Dr. Greco's part. Accordingly, the jury's verdict of $1,500,000 was apportioned as follows: Dr. LaBuz, 10%; Dr. Martyak, 15%; Commonwealth of Pennsylvania, 75%. The jury attributed $837,000 to the wrongful death action, and $663,000 to the survival action. The court added delay damages under Pa. R.C.P. No. 238 at the rate of 10% per annum, not compounded, from October 15, 1979 to September 30, 1981. The trial court denied defendants' motions for new trial and this appeal followed.

## Issues

Dr. LaBuz raises four issues and the Commonwealth raises twenty. Our task is to view all of the evidence and to determine whether the court en banc abused its discretion or committed an error of law in denying the motions for new trial. *Handfinger v. Philadelphia Gas Works,* 439 Pa. 130, 266 A.2d 769 (1970).

Both the Commonwealth and Dr. LaBuz raise questions concerning the statute of limitations as to the wrongful death action, involving the length of the limitation period and its proper starting point. The Commonwealth continues to question the trial court's grant of a compulsory nonsuit in favor of Dr. Greco. Other issues affecting liability involve a rejection of a pleading amendment sought by the Commonwealth, its claim for a mistrial on the basis of newspaper publicity and various contentions concerning trial conduct, evidence rulings and the closing arguments and charge given to the jury.

As to damages, Dr. LaBuz seeks to avoid the imposition of delay damages, the Commonwealth argues for the application of a statutory dollar maximum on

the amount of damages recoverable against it, and both of those defendants pursue questions pertaining to evidentiary rulings affecting damages.

## Statute of Limitations
### General

Dr. LaBuz asserted the statute of limitations as a bar to the wrongful death action by way of affirmative defense in his new matter as required by Pa. R.C.P. No. 1030. Later, LaBuz moved for judgment on the pleadings and summary judgment based on the statute of limitations. In view of the approaching trial date, the trial court declined to hear arguments on the motions, deferring consideration of the matter until the pretrial conference. At that time, the trial judge ruled, as a matter of law, that the statute of limitations had not expired on the wrongful death action, and therefore granted the plaintiff's motion to exclude any evidence relative to the expiration of the statute. LaBuz and the Commonwealth both noted exceptions to the judge's ruling, although that date was the first time on which the Commonwealth raised the statute of limitations.

### Waiver by the Commonwealth

In its opinion on the motions for new trial, the court en banc ruled that, under Pa. R.C.P. No. 1032, the Commonwealth had waived the statute of limitations defense by failing to assert it affirmatively in new matter. The Commonwealth now argues that, under *Gagliardi v. Lynn*, 446 Pa. 144, 285 A.2d 109 (1971), it should not have been precluded from asserting the statute of limitations defense because, inasmuch as both co-defendants had raised the defense in a timely manner, the tardy plea would not surprise the plaintiff, and the protection of the statute of lim-

itations should extend to all defendants. *Gagliardi* does support the Commonwealth's argument on this point, but we believe that the liberal construction approach manifested in that case was overshadowed by the Pennsylvania Supreme Court's later pronouncements of strict adherence to the rules of issue preservation in *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974), and *Tagnani v. Lew*, 493 Pa. 371, 426 A.2d 595 (1981). Accordingly, we agree with the court en banc that the Commonwealth waived the statute of limitations defense by not raising it seasonably in new matter.

### One-year or Two-year Limitation

On May 2, 1977, the date of Richardson's death, the statute of limitations on wrongful death actions was one year.[1] With enactment of the new Judicial Code, which became effective June 27, 1978, the statute of limitations on wrongful death actions was enlarged to two years.[2] The new statute did not revive any actions barred under the former statute before the effective date of the new Code.[3] Therefore, Dr. LaBuz argues, the one-year limitation was a conclusive bar, in that it had expired on May 2, 1978, before the effective date of the new Code.

### Discovery Rule as to Limitation

However, the trial court ruled that the statute began to run on April 2, 1979, as the date Mrs. Richard-

---

[1] Act of April 26, 1855, P.L. 309, Sec. 2, 12 P.S. §1603.

[2] 42 Pa. C. S. §5524(2).

[3] Section (b) of the Act of July, 9, 1976, P.L. 586, No. 142, provides as follows:

(b) No cause of action fully barred prior to the effective date of this act shall be revived by reason of the enactment of this act.

son discovered the cause of her husband's death, rather than on the date of death itself. In so ruling, the trial court applied the discovery rule which Pennsylvania courts have characterized as follows:

With the question of "reasonableness" as a constant qualification running through the decisional law, the principle emerges that three independent phases of knowledge must be known or knowable to plaintiff before the limitations period commences: (1) knowledge of the *injury;* (2) knowledge of the *operative* cause of the injury; and (3) knowledge of the *causative relationship* between the injury and the operative conduct.

*Anthony v. Koppers,* 284 Pa. Superior Ct. 81, 97, 425 A.2d 428, 436 (1980) (emphasis in original). After trial of the present case, the Supreme Court reversed the Superior Court *Koppers* decision on other grounds, holding the discovery rule inapplicable to wrongful death actions. *Anthony v. Koppers,* 496 Pa. 119, 436 A.2d 181 (1981), *rev'g* 284 Pa. Superior Ct. 81, 425 A.2d 428 (1980).

Dr. LaBuz argues that the *Koppers* decision should be given retroactive effect, thereby making Richardson's date of death the triggering date for the statute of limitations. In that event, the wrongful death action would have been fully barred before the effective date of the Code, and the one-year, rather than the two-year, statute would apply.

A judicial decision will be limited to prospective application only if it "establishes a new principle of law, either by overruling clear past precedent or by deciding an issue of first impression whose resolution was not clearly foreshadowed." *Schreiber v. Republic Intermodal Corp.,* 473 Pa. 614, 622, 375 A.2d 1285, 1289 (1977).

The Supreme Court noted that *Koppers* presented a case of first impression for its consideration. By holding the discovery rule inapplicable to wrongful death actions, the court departed from the general judicial trend in Pennsylvania of extending the discovery rule to an increasing variety of situations. *See Ayers v. Morgan,* 397 Pa. 282, 154 A.2d 788 (1959) and its progeny.

Dr. LaBuz argues that *Workmen's Compensation Appeal Board v. Chobanian,* 19 Pa. Commonwealth Ct. 632, 339 A.2d 126 (1975), "clearly foreshadowed" the result in *Koppers;* in *Chobanian,* this court held the discovery rule inapplicable to death actions arising under section 315 of the Pennsylvania Occupational Disease Act.[4] However, *Koppers* construed an entirely different statute from that applicable in *Chobanian.* Indeed, the Superior Court did not see *Chobanian* clearly as foreshadowing the ultimate *Koppers* rule, resulting from the Supreme Court's reversal of its decision to extend the discovery rule to wrongful death actions. *Anthony v. Koppers Co., Inc.,* 284 Pa. Superior Ct. 81, 425 A.2d 428 (1981).

Therefore, we believe that *Koppers* did establish a new principle of law by deciding an issue of first impression whose resolution was not clearly foreshadowed. The principle announced by *Koppers* should therefore be given prospective effect only, and the discovery rule should be applied to this wrongful death action.

### Factual Application of Discovery Rule

The trial judge decided at pre-trial, as a matter of law, that the wrongful death action was not barred by

---

[4] Act of June 21, 1939, P.L. 566, *as amended,* Sec. 315, 77 P.S. §1415.

the statute of limitations because he found that Mrs. Richardson did not discover the causative connection between her husband's death and the malpractice until April 2, 1979.[5]

By so ruling, the trial court removed the discovery issue from the jury and excluded all evidence with regard to "reasonableness" and the three-pronged knowledge test of the discovery rule. Although the question of whether or not to apply the discovery rule to this case was undoubtedly one of law, the determination of when Mrs. Richardson actually discovered or reasonably should have discovered the injury, the cause and the connection was a question of fact for the jury. See Petri v. Smith, 307 Pa. Superior Ct. 261, 453 A.2d 342, 348 (1982). The trial court therefore made a material and prejudicial error by removing those factual determinations from the jury, warranting the grant of a new trial to determine factually the date on which the statute of limitations began to run. See Smith v. Bell Telephone Co. of Pennsylvania, 397 Pa. 134, 153 A.2d 477 (1959).

Insofar as the Commonwealth waived the statute of limitations defense by not raising it seasonably as required under Pa. R.C.P. No. 1030, it would be unjust

---

[5] The court en banc concluded that the record revealed "unintentional concealment of Roy Richardson's death." The discovery rule and the rule of unintentional concealment are two distinct legal principles. See McNair v. Weikers, 300 Pa. Superior Ct. 379, 446 A.2d 905 (1982).

Plaintiff's reply to new matter was based solely on the discovery rule theory, which was therefore the basis for the trial court's ruling that the statute of limitations had not barred the wrongful death action. Plaintiff cannot raise a new theory at the post-trial motion stage which was not raised during trial. Morgan v. Sbarbaro, 307 Pa. Superior Ct. 308, 453 A.2d 598 (1982). The unintentional concealment issue was therefore not properly before the court en banc and so is not reviewable by this court.

to afford the Commonwealth an opportunity to do so now. Therefore, a new trial on the statute of limitations defense as a bar to the wrongful death action should not be awarded to the Commonwealth.

## Nonsuit As To Dr. Greco

Although the grant of a new trial ordinarily means a new trial generally, and restores the case to its original status to be tried de novo as to all parties and all issues, *Pupich v. Bock,* 202 Pa. Superior Ct. 382, 195 A.2d 809 (1963), a defendant who has been exculpated from any negligence should not be subject to another trial. *Stokan v. Turnbull,* 480 Pa. 71, 389 A.2d 90 (1978).

In this case, the trial court granted Dr. Greco's motion for compulsory nonsuit because the plaintiff did not produce any expert testimony regarding negligence on Dr. Greco's part. *Johnson v. Wurster,* 267 Pa. Superior Ct. 565, 407 A.2d 54 (1979). The Commonwealth objected to Dr. Greco's removal, but could not indicate any admissible[6] expert testimony it intended to introduce against Dr. Greco. Therefore, the trial court properly granted the nonsuit. *Capan v. Divine Providence Hospital,* 270 Pa. Superior Ct. 127,

---

[6] Even if the Commonwealth's expert, Dr. Field, had some testimony to offer regarding the negligence of Dr. Greco, it would have been beyond the fair scope of the doctor's report filed by the Commonwealth, and therefore inadmissible under Pa. R.C.P. No. 4003.5-(c).

We agree with the court en banc that the following reference in Dr. Field's report does not provide adequate notice that he intended to offer an opinion about Dr. Greco's negligence:

Any temperal derangement was not caused by failure of the hospital or their employees, but was engendered by misdiagnosis or communication problems between involved physicians.

Dr. Greco's name was not mentioned anywhere in Dr. Field's report.

410 A.2d 1282 (1979), *rev'd on other grounds,* 287 Pa. Superior Ct. 364, 430 A.2d 647 (1980). Because it appears as a matter of law that there is no liability on the part of Dr. Greco, no new trial should be granted as to him. *Brogan v. City of Philadelphia,* 346 Pa. 208, 29 A.2d 671 (1943).

In a related matter, the Commonwealth argues that the trial court erred in refusing to allow it to read relevant parts of Dr. LaBuz's deposition into evidence after the plaintiff had read other parts. The Commonwealth relies on Pa. R.C.P. No. 4020(a)(4) which provides:

> If only part of a deposition is offered in evidence by a party, any other party may require him to introduce all of it which is relevant to the part introduced, and any party may introduce any other parts.

The Commonwealth argues that, by requiring it to postpone the reading until its case in chief, the court excluded valuable evidence which would have militated against granting Dr. Greco's motion for nonsuit after the close of plaintiff's case.

The record indicates that the Commonwealth's request was that Commonwealth attorneys, rather than the plaintiff's attorney, be permitted to read other parts of the deposition into evidence during plaintiff's case in chief. The rules provide no support for the distinction. Furthermore, the ruling did not result in any prejudice to the Commonwealth because Dr. LaBuz's deposition could not provide the expert medical testimony necessary to prevent the granting of the nonsuit. *Johnson v. Wurster,* 267 Pa. 565, 407 A.2d 54 (1979). Therefore, the court en banc properly denied the Commonwealth's motion for new trial on this point.

### OTHER LIABILITY ISSUES
#### *Pleading Amendment as to Doctor's Employment Status*

Following *Department of Transportation v. Pace,* 64 Pa. Commonwealth Ct. 273, 439 A.2d 1320 (1982), we affirm the trial court's refusal of the Commonwealth's belated motion to change its original answer acknowledging Dr. LaBuz to be an employee, to claim instead that he was an independent contractor. Even if the Commonwealth's ignorance as to the status of a physician in one of its own hospitals was excusable at the outset, the Commonwealth admits that it acquired that information not later than the date of Dr. LaBuz's deposition, nine months before trial. Because allowance of the inexcusably late amendment on the first day of trial would have injected a new theory into the case which plaintiff was not prepared to argue, the trial court properly denied the amendment as prejudicial.

#### *Newspaper Publicity*

The trial court properly denied the Commonwealth's motion for a mistrial and polling of the jurors with respect to the impact of a local newspaper article reporting the plaintiff's case-in-chief. In the absence of appellate authority in Pennsylvania relating to civil trial publicity, we conclude that the trial judge's finding, that the report was accurate, and his jury instructions, that news reports be disregarded, were appropriate and effective precautions.

#### *Trial Evidence Matters*

We reject the Commonwealth's contention that the trial judge erred in failing to admonish both counsel and the jury with respect to alleged argument by plaintiff's counsel with witnesses. Because the Com-

monwealth sought no such remedial measures during the trial, beyond the judge's proper rulings upon objections, the Commonwealth cannot now complain. *Tagnani v. Lew*, 493 Pa. 371, 426 A.2d 595 (1981).

The trial judge correctly excluded the Commonwealth's offer to prove that the hospital was accredited by the Joint Commission on Hospital Accreditation. Although the matter of alleged noncompliance with the regulations of that Commission, as raised by the plaintiff, was admitted as germane to the issue of negligence, the matter of accreditation itself—never contested—was not relevant.

The trial judge also ruled correctly in allowing an expert witness for the plaintiff to testify about the hospital's failure to order an autopsy on the deceased, because that testimony was elicited in rebuttal to defense cross-examination of another expert challenging the accuracy of the autopsy performed more than a year after death.

The trial judge also was fully correct in rejecting Commonwealth cross-examination involving a hypothetical question based on facts not contained in the hospital record, and also in refusing to permit direct examination of an expert witness by the Commonwealth, in that the Commonwealth had not named the witness in advance as required by Pa. R.C.P. No. 4003.-5.

## Closing Argument

With respect to closing arguments, Dr. LaBuz contends that plaintiff's counsel implied to the jury that all of plaintiff's evidence was impressed with the imprimatur of the court. However, statements that the judge would have excluded "anything improper or illegal or inadmissible about . . . testimony . . . we presented" was merely a belaboring of the obvious as

to admissibility and a response to contrary suggestions in the closing for Dr. LaBuz.

We also reject the Commonwealth's complaints about (1) the references by plaintiff's counsel to "Almighty God" and the "destiny" that brought the plaintiff into contact with legal counsel and (2) the misquotation, in plaintiff's closing, of a Dr. Fields; the Commonwealth did not object to the first two matters at trial and also waived the latter issue by neither arguing nor briefing it before the court en banc. *Kenworthy v. Burghart*, 241 Pa. Superior Ct. 267, 361 A.2d 335 (1976).

## DAMAGES

### Damages Limitation

The Commonwealth argues further that the $250,000 limitation of liability under the Sovereign Immunity Act (Act 152)[7] is applicable to this action, and the court en banc therefore erred in denying its motion to mold the verdict against the Commonwealth to $250,000. In *Gibson v. Commonwealth*, 490 Pa. 156, 415 A.2d 80 (1980), the Supreme Court held that Act 152 could not be applied to causes of action arising before its effective date, September 28, 1978, and that such actions are governed by *Mayle v. Pennsylvania Department of Highways*, 479 Pa. 384, 388 A.2d 709 (1978), which abrogated sovereign immunity and has retroactive effect. The Commonwealth argues, however, that *Gibson* did not proscribe retroactive application of the limitation of liability provision of Act 152. Our court recently decided this issue to the contrary in *Commonwealth v. Twentier*, 76 Pa. Common-

---

[7] Section 5111 of the Judiciary Code, *formerly* 42 Pa. C. S. §5111, repealed by section 221(g) of the Act of October 5, 1980, P.L. 693. A similar provision is now found in section 8528 of the Judicial Code, 42 Pa. C. S. §8528.

wealth Ct. 537, 464 A.2d 642 (1983), which therefore controls the present case on this point.[8]

### Accident Facts in Relation to Damages

The Commonwealth's contention, that the court erred in refusing to allow it to introduce any evidence with regard to the circumstances of the accident, is without merit. This action is solely for the damages caused by the medical malpractice, not the auto accident. The negligence of Richardson in causing the accident is irrelevant, and the injuries he sustained in the accident are relevant only to determine what his physical state would have been but for the negligence of the doctors and the hospital.

### Accident Damages in Relation to Life Expectancy

Plaintiff called an economic expert, Dr. Verzilli, who testified as to Richardson's life expectancy, loss of earning capacity and other factors relevant to the computation of damages. The plaintiff asked Dr. Verzilli to assume, in rendering his opinion, that Richardson was in excellent health up to May 2, 1977, and had not been hospitalized during his adult life. Both the Commonwealth and Dr. LaBuz argue that

---

[8] We note that, in light of *Twentier*, the primary inquiry is whether the cause of action arose before or after the effective date of Act 152, September 28, 1978. 42 Pa. C. S. §5502 provides in part:

> The time within which a matter must be commenced under this chapter [dealing with limitation of time] shall be computed . . . from the time the cause of action accrued.

Where, as here, the discovery rule applies, the statute of limitations does not begin to run until the plaintiff discovers, or reasonably should discover, facts on which to base a cause of action. Therefore, the cause of action accrues on the date of discovery.

The same error could also be raised in regard to the issue of whether the cause of action accrued before the effective date of Act 152 for purposes of applying the limitation of liability provision. However, the Commonwealth did not challenge the non-application of the provision on this ground, and we cannot do so on its behalf.

the trial court erred in sustaining plaintiff's objections to cross-examination of Dr. Verzilli on whether his opinion took into consideration the injuries Richardson sustained in the auto accident, apart from the injuries sustained as a result of the doctors' and hospital's negligence. The court en banc found the trial court's ruling proper, presumably on the ground that the cross-examination was beyond the scope of direct or was simply irrelevant. The court en banc indicated that defendants would have been permitted to call their own economic expert to testify with regard to Richardson's accident injuries.

We disagree with the trial court's ruling, and believe that the proffered cross-examination was relevant and was not beyond the scope of direct. We find nothing wrong with the assumption plaintiff asked Dr. Verzilli to make in rendering his opinion. Indeed, Richardson was in excellent health up to May 2, 1977, although this fact has limited relevance. Dr. Verzilli's reliance upon a life expectancy table of a normal, thirty-year old male indicates that he extended the assumption of excellent health past May 2, 1977, contrary to the evidence adduced at trial. Therefore, his assumption and use of that table opened the door for cross-examination on Richardson's state of health on May 2, 1977 and thereafter. We conclude that the court en banc abused its discretion in affirming the trial court's ruling on this point, and believe that the error was material and prejudicial, thereby warranting the grant of a new trial on the damages issue only.

### Inferences from Failure to Call Damages Witness

As required by Pa. R.C.P. No. 4003.5(a)(1)(a) and (b), the Commonwealth responded to written interrog-

atories by identifying Professor A. C. Houston as the economic expert witness it intended to call, and submitted the report which was to form the basis of Houston's opinion of Richardson's lost future earnings. As part of the voir dire examination of the jurors, plaintiff's counsel referred to Houston as "a potential possible witness for the Commonwealth," and asked whether any jurors knew Professor Houston. At trial, the Commonwealth did not call Houston nor any other economic expert.

After both defendants had rested, plaintiff moved the court for permission to reopen her case and place on the record the fact that the Commonwealth had not called Professor Houston, in order to lay a foundation for comment to the jury upon the Commonwealth's failure to present any economic evidence to rebut Dr. Verzilli's opinion. The trial judge granted the motion and also affirmed a point for charge that the jury could draw a negative inference from the fact that the Commonwealth did not call Professor Houston. The Commonwealth argues that the trial court erred in granting both the motion and the point for charge.

The general rule is that if a litigant fails to call a witness who presumably would support his allegations, the opposing party is entitled to have the jury instructed that it may infer that the witness, if called, would testify adversely to the party who failed to call him. *Haas v. Kasnot*, 371 Pa. 580, 92 A.2d 171, (1952). *See* 2 Wigmore, Evidence §285 (3d. ed. 1940).

The Commonwealth's initial contention, that this rule of negative inference can be applied only to first-hand-knowledge factual witnesses and not to expert witnesses, lacks authoritative support; decisions of the Pennsylvania Supreme Court, cited below, have applied the rule to expert medical witnesses, and several

decisions of this court, also cited below, have treated it as applicable to expert valuation witnesses.

Of more moment is the Commonwealth's argument that use of the negative inference was ruled out by "availability of the nontestifying witness" to the party who seeks advantage of the inference. *Downey v. Weston*, 451 Pa. 259, 266, 301 A.2d 635, 640 (1973). The trial court en banc, as well as counsel for Richardson, cited *Pennsylvania Co. for Insurance on Lives & Granting Annuities v. Philadelphia*, 262 Pa. 439, 105 A. 630 (1918) for the proposition that a private litigant cannot compel an expert witness to testify because such testimony normally must be a matter of mutual agreement. Hence, they concluded, there was no real "availability" of Professor Houston, as the Commonwealth's expert, to Richardson, on the other side. Doubtless because trial lawyers have seldom wished to risk subpoenaing an opposing expert witness to give opinion testimony, there are few appellate decisions on the matter of compelling the other side's expert witness to testify; Richardson has directed us to *Evans v. Otis Elevator Co.*, 403 Pa. 13, 168 A.2d 573 (1961), which expressly recognized that an expert witness has a right and privilege not to testify for the opposition.

However, the current line of decisions on the negative inference does not proceed on the basis of any legal or factual presumption that an expert witness, uncalled by the party who prepared him, is necessarily unavailable to the party seeking the benefit of the inference. In *Downey*, the Supreme Court, first noting that the existence and identity of the medical expert was known to all, puts stress on the point that there had been no showing that the address of that doctor was unknown, that he would have rejected a request

to testify for the other side, or that he would have proved to be hostile or uncooperative. Thus it appears that, if a party wishes to benefit from the negative inference, that party has a burden to show as a matter of fact a clearcut inability to obtain the testimony of the witness, even where the witness is an expert. Where the party seeking the benefit of the inference is a plaintiff, as in this case and as in *Downey,* we realize that severe time constraints may be present with respect to developing such a showing, in view of the fact that a defendant's failure to call a witness may not be apparent until quite late in a trial. In the earlier cases of *Bentivoglio v. Ralston,* 447 Pa. 24, 288 A.2d 745 (1972) and *Rupnik v. Pennsylvania Railroad Co.,* 412 Pa. 460, 194 A.2d 906 (1963), the parties seeking the benefit of the inference were defendants. Nevertheless, *Downey* tells us that the obligation falls upon a plaintiff as well.

This court has nevertheless been constrained to follow the Supreme Court's identification disqualification, under *Bentivoglio* and *Downey. Redevelopment Authority of Philadelphia v. Cohen,* 31 Pa. Commonwealth Ct. 173, 375 A.2d 881 (1977); *Klick v. Department of Transportation,* 20 Pa. Commonwealth Ct. 627, 342 A.2d 794 (1975); *Lutsko v. Department of Transportation,* 13 Pa. Commonwealth Ct. 150, 318 A.2d 361 (1974).

In this case, as in *Lutsko,* the identity of the proposed expert witness and the substance of his opinion had been disclosed. Hence, the trial court contravened the above-described judicial rulings, in permitting plaintiff to reopen her case to place into evidence the fact that the Commonwealth did not call Professor Houston, and in charging the jury that they could draw a negative inference from that fact. The grant of a

new trial to the Commonwealth is therefore required on damages.

### Delay Damages

LaBuz contends that no delay damages should have been assessed against him. Pa. R.C.P. No. 238 provides in part:

(a)   Except as provided in subdivision (e), in an action seeking monetary relief for bodily injury, death or property damage . . . the court . . . shall (1) add to the amount of compensatory damages . . . in the verdict of a jury . . . damages for delay at ten (10) percent per annum, not compounded, which shall become part of the . . . verdict . . . .

. . . .

(c)   Except as provided in subdivision (e), damages for delay shall be added to the . . . verdict . . . against all defendants found liable . . . .

. . . .

(e)   If a defendant at any time prior to trial makes a written offer of settlement in a specified sum with prompt cash payment to the plaintiff, and continues that offer in effect until commencement of trial, but the offer is not accepted and the plaintiff does not recover . . . by verdict . . . exclusive of damages for delay, more than 125% of the offer, the court . . . shall not award damages for delay for the period after the date the offer was made.

On August 13, 1981, LaBuz made a written offer of settlement of $100,000 and held the offer open until the start of trial on September 21, 1981. Thereafter, LaBuz made offers of $300,000 and $368,750, which

the plaintiff rejected. Because only a written offer made before and held open until the start of trial will prevent the assessment of delay damages, the two later offers have no effect on the resolution of this issue.

At the center of LaBuz's argument is his contention that only that percentage of negligence attributed to an individual defendant should be considered in determining whether a court may assess delay damages against that defendant, rather than the entire amount awarded against all defendants. Although no Pennsylvania appellate courts have addressed this issue, the Washington County Common Pleas Court applied the analysis urged by LaBuz in *Havelka v. Sheraskey,* (461 May Term 1979, filed February 9, 1981), *dismissed on other grounds,* 295 Pa. Superior Ct. 326, 441 A.2d 1255 (1982). In that case, the court awarded delay damages against one defendant found 93% negligent, but not against another found only 7% negligent, where the verdict was not more than 125% of the latter's written offer before trial. *See also* Judge BARRY's opinion in *Hill v. Letender,* 113 P.L.J. 154 (1983).

We believe that this approach is consistent with the purpose of Rule 238—to encourage good faith negotiations and early pretrial settlements. *Laudenberger v. Port Authority of Allegheny County,* 496 Pa. 52, 436 A.2d 147 (1981), *appeal dismissed,* 456 U.S. 940, 102 S. Ct. 2002 (1982). It would be unrealistic to require each defendant to offer nearly the full amount of damages ultimately recovered in an action, where the amount finally attributed to each defendant is only a percentage of the total (as distinguished from a judgment for which liability is joint and several as to all defendants, where a defendant required to pay the full judgment amount can seek contribution

from the other defendants). We cannot presume that the legislature intended such an absurd result. 1 Pa. C. S. §1922(1).

The court en banc also concluded that the defendant's percentage of liability should form the basis for determining whether to assess delay damages. However, because the court en banc affirmed the liability of Dr. LaBuz on the wrongful death action, his share of the liability was computed at 10% of the total $1,500,000 award, or $150,000. This is more than 125% of the $100,000 offer, thereby warranting the assessment of delay damages. In light of our grant of new trial for jury consideration of the date of discovery to start the running of the statute of limitations on the wrongful death action, the court may have to recompute the assessment of delay damages should the jury's findings render the wrongful death action barred.

The Pennsylvania Supreme Court held Rule 238 damages constitutional in *Laudenberger v. Port Authority of Allegheny County*, 496 Pa. 52, 436 A.2d 147 (1981), *appeal dismissed*, 456 U.S. 940, 102 S. Ct. 2002 (1982), and this court specifically held that delay damages are assessable against the Commonwealth in *Commonwealth v. Twentier*, 76 Pa. Commonwealth Ct. 537, 464 A.2d 642 (1983). Therefore, the Commonwealth's contentions to the contrary are without merit.

### Other Damages Issues
#### Income Tax Consequences

The Commonwealth argues that the trial court erred in granting plaintiff's pretrial motion to exclude, among other matters, all evidence relating to income taxes Richardson would have had to pay on

his lifetime earnings. Federal,[9] as well as state, jurisdictions across the nation have disagreed on whether evidence of income tax liability should be introduced into a personal injury case as offsetting the damage award for lost future earnings, and whether the jury should be instructed that the award is exempt from federal income taxation under section 104(a)(2) of the Internal Revenue Code.

In a Pennsylvania wrongful death action, we must regard the controlling authority to be *Girard Trust Corn Exchange Bank v. Philadelphia Transportation Co.*, 410 Pa. 530, 190 A.2d 293 (1963), where the Pennsylvania Supreme Court held

> The majority rule in the United States is that in fixing damages for the determination of decedents' earning capacity, the income tax consequences of the matter should not be taken into consideration . . . This, in our opinion, is based

[9] In *Domeracki v. Humble Oil Refining Co.*, 443 F.2d 1245 (3d. Cir.), *cert. denied*, 404 U.S. 883 (1971), Judge ALDISERT distinguished between the evidentiary and instruction issues, noting that undue confusion and complication of the issues results from admitting evidence of estimated income tax for the jury to consider in determining the amount of the award, but that no such confusion results from a simple, cautionary instruction that the award is not taxable, and therefore the jury should not consider the effect of income tax. Thus, the rule in federal district courts within the Third Circuit was that the instruction, if requested, is proper, but the evidence is not admissible.

However, in *Norfolk and Western Railway Co. v. Liepelt*, 444 U.S. 490 (1980), the United States Supreme Court held that, in a wrongful death action brought in state court under the Federal Employer's Liability Act, 45 U.S.C. §§51-60, the trial court must not exclude evidence showing the effect of income taxes on the decedent's estimated future earnings, and, if requested, the trial court must instruct the jury that the award is not subject to income tax and therefore such tax should not be considered in fixing the amount of the award.

upon sound legal reasoning and is now advanced
as the rule to be followed in Pennsylvania.
*Id.* at 538, 190 A.2d at 298.

In both that case and a later Supreme Court af-
firmation of the Pennsylvania rule, *Gradel v. Inouye,*
491 Pa. 534, 421 A.2d 674 (1980), the court's holding
was limited to the instruction issue. "Income tax as
it relates to damages should be mentioned neither in
argument nor in jury instructions." *Id.* at 547, 421
A.2d at 680. However, we believe that the prohibition
against reference to income tax applies *a fortiori* to
the exclusion of all evidence regarding income tax con-
sequences, which is the sole tax issue properly pre-
served by the Commonwealth.[10] Accordingly, we con-
clude that the trial court correctly granted plaintiff's
motion to exclude the income tax evidence.

## Earning Capacity

The Commonwealth contends that testimony con-
cerning the likely advancement of Richardson's career
with the Singer Company was incompetent because the
witness had left Singer six months after Richardson's
death, and the testimony was therefore based on mere
speculation or guess.

Because evidence of earning capacity need not be
established with mathematical exactness, *Kaczkowski
v. Bolubasz,* 491 Pa. 561, 421 A.2d 1027 (1981), the
testimony was competent; the brevity of tenure af-
fected only its weight. Moreover, our review of the
record indicates that the Commonwealth did not ob-
ject to his testimony at the time of trial, and conse-
quently has waived this issue. *Doner v. Rodgers,* 484
Pa. 496, 399 A.2d 402 (1979).

---

[10] The Commonwealth submitted a point for charge on the in-
come tax issue, but does not raise the denial of that point in this
appeal.

## Closing Argument

The Commonwealth and Dr. LaBuz here reassert various objections made to the arguments of plaintiff's counsel during closing, including remarks calling for a "big city verdict," references to the jury's "Christian" heritage and the plaintiff's foreign and nonwhite heritage, identification of plaintiff's counsel as the only local lawyer, and remarks relating the public visibility of the case to the concept of a high verdict. However, defense counsel entered no objection to these remarks at the time they were made, with the exception of an objection by counsel for Dr. LaBuz to the "big city verdict" remark, but that latter objection was not preserved in the motion for new trial. Therefore, none of those objections are here available as a basis for review on appeal.

In reliance upon *Ruby v. Casello,* 204 Pa. Superior Ct. 9, 201 A.2d 219 (1964), defendants contend that references by plaintiff's counsel to large sums of money improperly suggested the amount of damages to the jury. Plaintiff's counsel asked rhetorically, "What is pain and suffering?" and then noted the high sums paid for art, celebrities salaries, and the like. The trial judge correctly overruled an objection on behalf of Dr. LaBuz to that mere analogy, which did not amount to a direct statement suggesting any specific sum, and the Commonwealth waived the matter by failing to object.

The trial judge also properly overruled the objection, on behalf of Dr. LaBuz, that plaintiff's closing argument, by reference to the collection of fines by the Commonwealth, contained a suggestion for punitive damages; in the whole context, with plaintiff's counsel also referring to the damages award as a

"debt," any such suggestion was so marginal as to be harmless.

Plaintiff counsel's exhortation of the jury, to the effect that the award must "last a lifetime" for the widow and her children, which met an objection on behalf of Dr. LaBuz on the basis that it negated consideration of the decedent's life as the true measure, certainly was ambiguous standing alone; however, the special interrogatories answered by the jury, being couched in terms relating to the decedent's lifetime, confirm that the jury was not misled and that the ambiguity was therefore harmless.

## Jury Instruction
### Interrogatories

With respect to the defense contention that special jury interrogatories should have been qualified as to "damages" by the words "if any," we note that the defendants made no timely request that those words be added to the special interrogatories, so that any impact of the omission has been waived. Moreover, in view of the trial judge's clear charge—that the jury was to award damages only if persuaded that the plaintiff had met her burdens—the interrogatories could not have misled the jury into believing that the court was directing it to award damages. The court en banc correctly denied the Commonwealth's motion for new trial on the point.

## The Charge

The Commonwealth argues that the trial court erred in denying seven of its requested points for charge and in granting two of plaintiff's. Our review of the record indicates that, with the exception of plaintiff's point nine, each of the challenged points for charge were either adequately covered by the

judge's charge, *Duffy v. National Janitorial Services, Inc.*, 429 Pa. 334, 240 A.2d 527 (1968), or did not accurately state the law, *Solomon v. Luria*, 213 Pa. Superior Ct. 87, 246 A.2d 435 (1968). Plaintiff's point nine instructs the jury to draw a negative inference from the fact that the Commonwealth failed to call its expert witness. This issue is dealt with elsewhere in the opinion.

### Scope of New Trial

Ordinarily, a court will grant a new trial on less than all issues only where the questions of liability and damages are not intertwined, and the liability issue is either not contested or has been fairly determined so that no substantial complaint can be made with respect thereto. In that event, the court may grant a new trial limited to the damages issue. *Nardi v. Stayton*, 270 Pa. Superior Ct. 267, 411 A.2d 520 (1979).

In *Bortner v. Gladfelter*, 302 Pa. Superior Ct. 492, 448 A.2d 1386 (1982), a jury awarded funeral expenses in a wrongful death action and no damages in the related survival action, despite uncontradicted evidence that net earnings during decedent's life would have been $77,659. The Superior Court remanded for a new trial on damages in the survival action only, letting stand the award in the wrongful death action. The court stated:

> The issues of causal negligence and contributory negligence have also been litigated fully, and there is no reason for setting aside the jury's finding that the negligence of defendant and plaintiff's decedent contributed equally to the decedent's death.

*Id.* at 499-500, 448 A.2d at 1390.

Analogously, in this case, the issues of the defendants' negligence have been fully litigated, and we find no reversible error in the defendants' assignments which relate to liability, aside from the statute of limitations defense to the wrongful death claim.

Accordingly, our grant of a new trial on this action is limited as follows: (1) A new trial for a jury's factual determination of when the statute of limitations began to run on the wrongful death action is granted, only as to Dr. LaBuz, based on the trial court's error in removing that issue from the jury;[11] (2) a new trial is granted to both Dr. LaBuz and the Commonwealth on damages, based on the trial court's errors in excluding relevant cross-examination of the plaintiff's economic expert, and in instructing the jury that they could draw a negative inference from the Commonwealth's failure to call an economic expert; and (3) Dr. Greco shall not be a party in the new trial because no negligence on his part has been established.

## Order

Now, April 10, 1984, the order of the court en banc, Court of Common Pleas of Luzerne County, dated September 17, 1982, is affirmed in part and reversed in part, and a limited new trial is granted as follows: (1) a new trial is granted, to Dr. LaBuz only, for a jury's factual determination of when the statute of limitations began to run on the wrongful death action alone; (2) a new trial is granted to Dr. LaBuz and the Commonwealth on damages only; and (3) Dr. Greco shall not be named as a party in the new trial.

---

[11] Should the jury determine that the statute of limitations bars the wrongful death action, delay damages assessable against Dr. LaBuz must be recomputed to reflect that determination.