Elizabeth Lutsko and John Lutsko, Appellants, v. Commonwealth of Pennsylvania, Department of Transportation, Appellee.

Argued November 9, 1973, before Judges CRUMLISH, JR., MENCER and ROGERS, sitting as a panel of three.

*H. Ray Pope, Jr.,* for appellants.

*David A. Johnston, Jr.,* Assistant Attorney General, with him *Robert W. Cunliffe,* Deputy Attorney General, and *Israel Packel,* Attorney General, for appellees.

OPINION BY JUDGE CRUMLISH, JR., April 11, 1974:

This is an appeal filed by condemnees Elizabeth and John Lutsko (Lutsko) from an order of the Court of

Common Pleas of Clarion County dated February 1, 1971, which denied their motion for a new trial in an eminent domain case.

On August 27, 1964, the then Department of Highways (Commonwealth) effected a condemnation of 10.51 acres of the Lutskos' 92.72 acre farm to construct a one-way or divided interchange to Interstate Route 80. An additional 2.45 acres were taken for a channel change on the Lutsko property. On the petition of Lutsko, a board of viewers was appointed. The viewers awarded damages of $1,570.00, plus $241.00 for an interest in an oil well which is not here in dispute.

Lutsko appealed this award to the Court of Common Pleas of Clarion County where a jury trial was conducted. Although Lutsko had notified the Commonwealth before trial that they intended to call a valuation expert, as required by Section 703(2) of the Eminent Domain Code of 1964,[1] only Elizabeth Lutsko testified at trial as to value. She estimated the fair market value of the property prior to condemnation to be $25,000.00 with an after-value of $8,000.00. The Commonwealth, whose position before the viewers as well as at trial was that the condemnation "specially benefited"[2] the Lutskos' remaining property by transforming it into a commercially attractive site, offered the opinion of two valuation experts. They appraised the property to have a before value of $4,000.00 and

---

[1] Act of June 22, 1964, Special Sess., P. L. 84, as amended, 26 P.S. §1-703(2). This Section provides: "If any valuation expert who has not previously testified before the viewers is to testify, the party calling him must disclose his name and serve a statement of his valuation of the property before and after the condemnation and his opinion of the highest and best use of the property before the condemnation and of any part thereof remaining after the condemnation on the opposing party at least ten days before the date when the case is listed for pre-trial or trial, whichever is earlier."

[2] Section 606 of the Eminent Domain Code of 1964, 26 P.S. §1-606.

$5,500.00 and an after-value of $5,800.00 and $62,500.00, respectively, and thus found no damages. On September 20, 1970, the jury returned a verdict of $1,000.00 in damages to Lutsko's property, and $241.00 for their interest in the oil well, and the court below thereafter denied Lutsko's motion for a new trial.

On appeal to this Court, Lutsko presents four grounds in its contention for a reversal of the lower court's refusal to grant a new trial: (1) the court erred in permitting counsel for the Commonwealth to comment in his closing argument on Lutsko's failure to call their valuation expert, and the court compounded the prejudice by instructing the jury that it could draw a negative inference from their failure to produce the expert's valuation; (2) the court erred in allowing testimony by the Commonwealth witnesses as to an after-value based upon speculative future commercial uses; (3) the court erred in its charge to the jury concerning "special benefits"; and (4) the verdict was inadequate. As we find the first ground to be an error of sufficient magnitude to warrant a reversal, we do not reach the remaining issues as we remand the case for a new trial.

Our scope of review in determining whether the lower court abused its discretion or committed an error of law in refusing a new trial was thoroughly discussed in our recent decisions in *Cohen v. Philadelphia Redevelopment Authority*, 12 Pa. Commonwealth Ct. 125, 315 A. 2d 372 (1974), and *Philadelphia Redevelopment Authority v. The United Novelty & Premium Company, Inc.*, 11 Pa. Commonwealth Ct. 216, 314 A. 2d 553 (1973). As Judge BLATT, writing for this Court in *Cohen*, said: "The grant or refusal to grant a new trial is within the discretion of the lower court and will not be reversed on appeal . . . 'absent a clear abuse of discretion or an error of law which controlled the outcome of the case.' Miskin v. Lancaster Redevelopment Au-

thority, 6 Pa. Commonwealth Ct. 97, 100, 293 A. 2d 135, 136 (1972). This discretion, however, is not absolute and where 'the verdict is against the clear weight of the evidence or (that) the judicial process has effected a serious injustice he (the trial court) is under a duty to grant a new trial.' Lewis v. Urban Redevelopment Authority of Pittsburgh, 5 Pa. Commonwealth Ct. 176, 179, 289 A. 2d 774, 776 (1972)." 12 Pa. Commonwealth Ct. 127, 135 A. 2d at 373. *See also Faith United Presbyterian Church v. Redevelopment Authority,* 7 Pa. Commonwealth Ct. 490, 298 A. 2d 614 (1972); *D'Alfonso v. Department of Transportation,* 5 Pa. Commonwealth Ct. 341, 291 A. 2d 117 (1972).

In commenting upon Lutskos' failure to call as a witness the valuation expert who had been listed as a prospective witness pursuant to the disclosure requirements of Section 703(2), the Commonwealth as well as the lower court invoked the negative inference which generally arises from a failure to produce evidence within a party's control. "Generally, if a litigant fails to call a witness who presumably would support his allegations, the opposing party is entitled to have the jury instructed that it may infer that the witness, if called, would testify adversely to the party who failed to call him. Haas v. Kasnot, 371 Pa. 580, 92 A. 2d 171 (1952); Mosely v. Reading Co., 295 Pa. 342, 145 A. 293 (1929); Abrams v. Crown, 178 Pa. Superior Ct. 407, 116 A. 2d 331 (1955)": *Bentivoglio v. Ralston,* 447 Pa. 24, 29, 288 A. 2d 745, 748 (1972). The rationale of this inference is expressed in Wigmore, as approved by our Supreme Court in *Downey v. Weston,* 451 Pa. 259, 266, 301 A. 2d 635, 640 (1973): "The failure to bring before the tribunal some circumstance, document, or witness, when either party himself or his opponent claims that the facts would thereby be elucidated, serves to indicate, as the most natural inference, that the party fears to do so, and this fear is some evidence that the circum-

stances or document or witness, if brought, would have exposed facts unfavorable to the party. These inferences, to be sure, cannot fairly be made except under certain conditions; and they are also open always to explanation by circumstances which make some other hypothesis a more natural one than the party's fear of exposure. But the propriety of such an inference in general is not doubted." (Wigmore, Evidence §285, at 162 (1940 ed.)).

One such circumstance, which negates the inference of unfavorable testimony from the uncalled witness, exists where the voiceless witness is equally available to both parties. *Downey v. Weston, supra; Haas v. Kasnot,* 377 Pa. 440, 105 A. 2d 74 (1954). In the instant case, the identity as well as the substance of the testimony of Lutskos' valuation expert was made known to the Commonwealth before trial; and if his damages estimate supported the Commonwealth's position, it could equally have offered his testimony at trial. As Lutsko fully complied with the requirements of Section 703(2), the valuation expert they intended to call was no longer "peculiarly within (their) reach and knowledge." *Bentivoglio v. Ralston,* 447 Pa. at 30, 288 A. 2d at 748. In *Bentivoglio* (a personal injury negligence action), the trial judge instructed the jury that it could draw a negative inference from the plaintiffs' failure to call as witnesses seven physicians who had treated plaintiff's injuries. The Supreme Court held this charge to be reversible error because the *identity* of the uncalled medical witnesses was *ascertainable* by the defendant's pretrial deposition of the records of the treating hospital and of plaintiff himself. Thus, the uncalled medical witnesses were not "peculiarly within the knowledge and reach of the plaintiff." Similarly, herein the Commonwealth *ascertained* the identity of Lutskos' uncalled valuation witness via the pretrial discovery afforded by Section 703(2), and, more-

over, knew the substance of his proposed testimony. To allow the Commonwealth to draw an adverse inference, under these circumstances, amounts to reversible error as it irreparably prejudiced the credibility of Lutskos' own testimony on the issue of damages, the only question before the jury.

This Court considered a similar issue in *Cohen v. Philadelphia Redevelopment Authority, supra.* The attorney for the condemnor in *Cohen* commented to the jury in his closing argument that it could draw a negative inference from the condemnee's failure to introduce the testimony of *any* expert witness although the condemnee there had admitted on cross-examination that his reproduction cost figures were based on consultations with industry experts. We there held that this comment was error as it effectively undercut the statutorily mandated qualification of a condemnee to testify on the issue of valuation.[3] Although the comment and instruction by the lower court herein may well have been more specifically directed to the inference that the testimony of the uncalled witness would be adverse to the condemnee's position, thus impeaching the credibility rather than the competence of the condemnee as a witness, we fear the jury missed this subtle distinction and dismissed Mrs. Lutsko's testimony as non-expert.

Nor does the fact that Lutsko had listed the uncalled expert as a prospective witness, as required by Section 703(2), distinguish this case from the rationale of our holding in *Cohen v. Philadelphia Redevelopment Authority, supra.* As the comment to Section 703(2) recognizes, the pre-trial disclosure of the identity and opinion of a party's valuation expert in an eminent domain case is a clear departure from existing law. *See* Pa. R. C. P. 4011(d); *Commonwealth v. Mitchell,* 46 Pa. D. & C. 2d 174 (1968); 111 U. Pa. L. Rev. 509 (1963).

---

[3] *See* Section 704 of the Eminent Domain Code, 26 P.S. §1-704.

"The purpose of this provision is to eliminate the surprise element in many cases where one expert is used before the viewers and another, with a different valuation and opinion of the highest and best use of the property, is called at trial." Comment, Section 703-2. The provision was not intended, however, to bind a party to a projected trial strategy with any deviation resulting in an inference that the projected but unproduced testimony must be unfavorable. *See Stoner v. Metropolitan Edison Company*, 439 Pa. 333, 266 A. 2d 718 (1970). To implement Section 703(2) in such a manner, at best, introduces collateral issues into the case; and at worst, discourages the parties from seeking expert opinion. In addition, it undermines the competence of a condemnee to testify absent expert opinion.

In conclusion, we hold it to be reversible error for either party or the trial judge in a condemnation trial to comment upon the failure of a party to introduce the testimony of a valuation expert whom he had listed as a prospective witness under Section 703(2) of the Eminent Domain Code of 1964.

Accordingly, we issue the following

ORDER

AND Now, this 11th day of April, 1974, the order of the Court of Common Pleas of Clarion County, dated February 1, 1971, is reversed and the court is ordered to grant a new trial.