CITY OF RAPID CITY, a Municipal Corporation under the laws of the State of South Dakota, Petitioner and Appellant,

v.

Fred H. BROWN and Gladys M. Brown, husband and wife, as joint tenants, Defendants and Respondents,

and

Small Business Administration and Pennington County, South Dakota, Defendants.

No. 11898.

Supreme Court of South Dakota.

April 15, 1977.

Gregory A. Eiesland and Gene N. Lebrun, of Lynn, Jackson, Shultz, Ireland & Lebrun, Rapid City, for petitioner and appellant.

Dennis H. Hill and Richard O. Sharpe, of Costello, Porter, Hill, Nelson, Heisterkamp & Bushnell, Rapid City, for defendants and respondents.

McKEEVER, Circuit Judge.

This is an appeal from a condemnation action in which a jury awarded Fred H. and Gladys M. Brown (the Browns), defendants and respondents, $155,000. On appeal, the City of Rapid City (City), petitioner and appellant, claims that the trial court erred by giving a missing-witness instruction which authorized the jury to infer that the testimony of a witness, who was not called to testify, would be unfavorable to the City. Also the City claims error in the trial court's refusing to allow its expert appraiser to explain why he did not consider a recent sale in his valuation of the Brown property. We reverse for the reasons discussed below.

On June 26, 1974, the City commenced this action to acquire by condemnation 84,-342 square feet of property belonging to the Browns. After service of a summons and petition, the parties entered into a stipulation by which the City deposited $124,000 with the Pennington County Clerk of Courts. This amount, based on an appraisal conducted by Homer Akins, was the estimated "just compensation" due the Browns. Pursuant to this agreement, a judgment was entered on July 9, 1974, vesting title and possession of the property in the City and granting $124,000 to the Browns. The stipulation and the interim judgment, however, reserved the issue of "just compensation" for a later jury determination.

On March 11 and 12, 1976, the trial was held and a jury verdict of $155,000 in favor of the Browns was returned. An amended judgment awarding that amount was entered on March 18, 1976. From that amended judgment, an appeal was taken to this court on March 30, 1976.

The facts are uncontested and can briefly be stated. At the trial, the Browns, having the burden of proof, introduced the testimony of three witnesses to establish the fair market value of their property at the date of taking (i. e., July 9, 1974). Gladys Brown, one of the owners of the property, testified that the property was worth between $211,000 and $253,000.[1] Mr. Russell Smith testified that the property was worth $156,000.[2] He then subtracted $6,000 from the fair market value, this amount reflecting the cost necessary to purchase fill. This reduced his appraisal to $150,000. Mr. Richard Kahler, a local real estate broker, testified that the property was worth $155,000,[3] but that it would cost $7,000 to fill the property to street level, thus reducing the property's value to $148,000.[4] The City offered the testimony of Mr. George Carey who placed the fair market value of the property at $118,000.[5] This figure excluded the cost of fill which Carey estimated to be $13,600.

The City did not, however, call Mr. Homer Akins. As stated earlier, Akins' original appraisal served as the basis for the stipulation entered into between the parties. His original appraisal done in May 1973, placed the fair market value of the property at $126,500. In March 1976, he again appraised the property and placed the value at $117,000 as of July 9, 1974. The City listed Akins as a potential witness in a pretrial notice. He was present in Rapid City during the first day of trial when the Browns presented their case in chief and

when the City conducted the direct examination of Mr. Carey. He did not testify, however, as the City rested after the testimony of Carey. The City presumably decided that Akins' testimony would be cumulative and duplicitous to the testimony of Carey. Akins left Rapid City at the end of the first day of trial.

On rebuttal, the Browns called, adversely, Mr. Joe Bailey, the Acquisition Director for the Urban Renewal Agency. Over the City's objection, Bailey confirmed that Mr. Akins was in town on the first day of trial and that he had made an appraisal of the Brown property.

Based upon these facts, the trial court gave the Browns' requested instruction which stated:

"INSTRUCTION NO. 13

Subject to what is hereinafter stated, if a party herein has failed to produce a witness within his power to produce, you may, if you see fit, infer therefrom that, if here given, the testimony of such witness would not have been favorable to such party. This rule is applicable, however, if and only if you believe the situation between such party and the witness was of a nature whereby with exercise of reasonable diligence such party could have produced such witness, further, that a reasonably prudent person in the same circumstances would have produced such witness if such party believed the testimony of such witness would be favorable to such party, further, that no reasonable excuse exists for the failure of such party to produce such witness and, further, that the witness was not equally available to the adverse party." [6]

As indicated, the instruction informs the jury that before it can make any inference it must first believe (a) that Akins could have been produced; (b) that the City

1. She placed the value between $2.50–$3.00 per square foot.

2. Smith placed the value at $2.00 per square foot for 78,000 square feet of land.

3. Kahler placed the value at $2.00 per square foot for 77,332 square feet of usable land.

4. This reduced the market value to $1.915 per square foot.

5. This is based upon $1.40 per square foot.

6. The instruction is based upon South Dakota Pattern Jury Instruction 5.01.

would have produced Akins if it believed his testimony would be favorable to it; (c) that the City had no reasonable excuse not to produce Akins; and (d) that Akins was not equally available to both the City and the Browns. The purpose behind this type of instruction is to prevent the suppression of evidence. *Kaniewski v. Emmerson*, 44 Mich.App. 737, 205 N.W.2d 812; *Barringer v. Arnold*, 1960, 358 Mich. 594, 101 N.W.2d 365.

■ The City relies upon *Lutsko v. Commonwealth, Department of Transportation*, 13 Pa.Cmwlth. 150, 318 A.2d 361, to support its contention of error. In *Lutsko* the court held it was "reversible error for either party or the trial judge in a condemnation trial to comment upon the failure of a party to introduce the testimony of a valuation expert whom he had listed as a prospective witness * * *." 318 A.2d at 365. In the present case, error is assigned to the giving of the instruction as opposed to mere comment. This distinction is of no import, however.

We agree with the rationale of *Lutsko* and hold that the trial court erred when it gave the above quoted instruction. The rationale of the instruction was stated in *Lutsko* as follows:

" 'The failure to bring before the tribunal some circumstance, document, or witness, when either party himself or his opponent claims that the facts would thereby be elucidated, serves to indicate, as the most natural inference, that the party fears to do so, and this fear is some evidence that the circumstances or document or witness, if brought, would have exposed facts unfavorable to the party. *These inferences, to be sure, cannot fairly be made except under certain conditions*; and they are also open always to explanation by circumstances which make some other hypothesis a more natural one than the party's fear of exposure. But the propriety of such an inference in general is not doubted.' (Wigmore, Evidence § 285, at 162 (1940 ed.))." 318 A.2d at 364. (emphasis supplied)

■ The inference of unfavorable evidence is negated, however, when the uncalled witness is equally available to both parties. Such is the case here. It is settled law in South Dakota that an appraiser may be called upon to testify by either party in a condemnation action. *Rapid City v. Baron*, 1975, S.D., 227 N.W.2d 617; *State Highway Commission v. Earl*, 1966, 82 S.D. 139, 143 N.W.2d 88. Thus Akins could have been compelled to testify at the trial by either party. The record reflects that his appraisal reports had been made available to the Browns. He was not, however, subpoenaed by the Browns and thus was free to leave when the City chose not to call him. A similar rationale is found in *Department of Transportation v. Gonterman*, 1976, 41 Ill. App.3d 62, 354 N.E.2d 76. This case construed Illinois Pattern Instruction 5.01 which serves as one source for the instruction given in this case. See also *State Highway Commission v. Carmel Estates, Inc.*, 1973, 15 Or.App. 41, 514 P.2d 1124; *Thoreson v. Milwaukee & Suburban Transport Co.*, 1972, 56 Wis.2d 231, 201 N.W.2d 745 (where the mere furnishing of a list of witnesses was sufficient to make a witness equally available). Additionally, no inference should arise when the testimony would be simply cumulative. *Victorson v. Milwaukee & Suburban Transport Co.*, 1975, 70 Wis.2d 336, 234 N.W.2d 332. We therefore conclude that the instruction should not have been given. In the present case there was no showing that evidence was suppressed. It is clear that Akins was available to both parties and that his testimony was cumulative to that of Carey.

The trial court erred when it gave the aforementioned instruction. Such error requires this court to reverse and remand this proceeding for a new trial.

This disposition renders it unnecessary to consider the other issue raised on appeal.

The judgment is reversed and remanded for a new trial.

DUNN, C. J., and WOLLMAN and ZASTROW, JJ., concur.

MORGAN, J., concurs specially.

McKEEVER, Circuit Judge, sitting for PORTER, J., disqualified.

MORGAN, Justice (concurring specially).

I am of the opinion that the trial court was totally in error in giving instruction No. 13 regarding the missing witness. I stress the distinction between the ordinary witness who testifies to facts, and the expert witness who testifies to opinion. Judge McKeever's quotation from Wigmore[1] touches directly on this when it refers to "facts—thereby—elucidated."

The real damage wrought by the instruction is the injection of prejudice into the case.

*State Highway Commission v. Earl*, 82 S.D. 139, 148, 143 N.W.2d 88, 92, cites with approval *Brown County v. Hall*, 61 S.D. 568, 249 N.W. 253, wherein this court said "the party calling such expert makes him his witness, therefore, the fact of prior employment or payment by the opposite party is not relevant or material." The case of *Rapid City v. Baron*, S.D., 227 N.W.2d 617 touches even more directly on the issue, citing the above quotation from Earl and points out that the court saw little or no probative value in the admission of such evidence of prior employment, but if any value exists it is "outweighed by the evidentiary counter-factors of prejudice and creation of collateral issues", citing *Department of Public Works and Buildings v. Guerine*, 19 Ill.App.3rd 509, 311 N.E.2d 722, 725–6. The court went on to point out that while the evidence of previous employment may inadvertently develop through the process of laying appropriate foundation on direct examination or on cross-examination, the allowance of comment in opening statements of counsel and in direct examination created the possibilities of prejudice and collateral issues immediately, and as a result tainted the proceeding ab initio. The instruction would obviously be more damaging in the minds of the jury than the comment described in the *Baron* case and permitted in the instant case.

As in the *Baron* case, supra, the defendants had the opportunity to subpoena the witness Akin who was one of the subjects of the discussion in *Baron*. Upon doing so he would become their witness. He would be testifying as to his opinion as opposed to testifying to any fact. To hold otherwise would require that any condemning authority who may rely on the opinions of a number of valuation experts has to parade each and every one of them to the witness stand to avoid the introduction of prejudicial collateral issues as was done in this case.

---

1. II Wigmore, Evidence § 285 at 162 (1940 ed.).