#28588, #28597-aff in pt & rev in pt -JMK
**2019 S.D. 57**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

LORETTA B. MEALY, Individually
and as Personal Representative of the
ESTATE OF TERRENCE L. MEALY,
and INVESTMENT ENTERPRISES, INC.,                   Plaintiffs and Appellants,

v.

BRUCE PRINS and CORRINE PRINS,
and PRAIRIE SKY GUEST & GAME
RANCH, LLC,                                         Defendants and Appellees.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIFTH JUDICIAL CIRCUIT
ROBERTS COUNTY, SOUTH DAKOTA
\* \* \* \*

THE HONORABLE JON S. FLEMMER
Judge
\* \* \* \*

REED RASMUSSEN
JULIE DVORAK of
Siegel, Barnett and Schutz, LLP
Aberdeen, South Dakota                              Attorneys for plaintiffs
                                                    and appellants.


LEE SCHOENBECK
JOSEPH ERICKSON of
Schoenbeck Law, P.C.
Watertown, South Dakota

SHAWN M. NICHOLS of
Cadwell, Sanford, Deibert
 & Garry, LLP
Sioux Falls, South Dakota                           Attorneys for defendants and
                                                    appellees.


\* \* \* \*

ARGUED JANUARY 8, 2019
OPINION FILED **10/09/19**

KERN, Justice

[¶1.] Loretta and Terrence Mealy and their corporation, Investment Enterprises, Inc., loaned Bruce and Corrine Prins nearly $1.2 million to operate Prairie Sky Guest & Game Ranch, LLC (collectively the Prins). Fifty-five promissory notes secured the loans. In 2015, Loretta, the Estate of Terrance Mealy, and Investment Enterprises, Inc. (collectively the Mealys) sued the Prins for breach of contract, unjust enrichment, and conversion. The Prins filed a counterclaim for relief including claims for conversion and unjust enrichment. In August 2015, the Prins moved for partial summary judgment, arguing that a portion of the Mealys' claims were barred by the statute of limitations and that the mortgage was unenforceable. The circuit court granted the Prins summary judgment in part, dismissing forty-eight of the fifty-five promissory notes as time-barred and concluding that the related mortgage did not secure a valid debt and was unenforceable.

[¶2.] The case proceeded to a jury trial. With respect to the seven promissory notes not barred by the statute of limitations, the jury returned a verdict for the Mealys on their breach of contract claim and determined the date on which prejudgment interest should accrue. The jury rejected the Mealys' claim for conversion and instead awarded the Prins $135,000 for a portion of their conversion counterclaim. With respect to the parties competing claims for unjust enrichment, the jury rendered an advisory verdict for the Mealys, awarding them $135,000. The circuit court adopted this recommendation and entered a judgment consistent with the verdicts. The Mealys appeal, alleging several errors for our review. The Prins,

by notice of review, challenge the advisory jury's award to the Mealys on their unjust enrichment claim. We affirm in part and reverse in part.

## Facts and Procedural History

[¶3.] In the late 1990s, the Prins presented a business plan to Terrance Mealy, an attorney from Iowa, to open a hunting lodge named Prairie Sky Guest and Game Ranch (Prairie Sky) on the Mealys' property in Marshall County. Between 1999 and 2008, the Prins borrowed $1,187,000 from the Mealys, evidenced by fifty-five promissory notes.[1]

[¶4.] On September 21, 2000, the parties signed an open-ended mortgage pledging the Prins's property as additional security. The mortgage listed the Mealys' business, Investment Enterprises, as the exclusive mortgagee and enumerated a single debt—a promissory note for $325,000—contained within a recital clause. The mortgage did not list any other notes, but it did include a broad future advances clause. The parties executed thirty of the fifty-five notes after signing the mortgage, none of which involved the sum of $325,000 reflected in the mortgage's recital clause. All six notes listing Investment Enterprises as creditor were executed after the mortgage.

[¶5.] At some point in 2000 or 2001, the Mealys and the Prins began acquiring buffalo together. Neither party completed a detailed summary of yearly ownership percentages until after the lawsuit was filed. However, financial

---

1. The obligee(s) listed on each promissory note varied—a few listed only Terrence Mealy, some listed Terrence *and* Loretta Mealy, others listed Terrence *or* Loretta Mealy, and finally, several named the Mealys' business, Investment Enterprises, Inc.

documents and correspondence between Bruce Prins and Terrance Mealy in 2004, 2007 through 2008, and 2009 indicate that during those years, the parties believed the Mealys owned 71% to 75 % of the herd while the Prins owned the remaining portion.

[¶6.] In 2008, the Mealys experienced financial difficulty and stopped loaning money to the Prins. Accordingly, the Prins applied for a loan from Dacotah Bank in Sisseton, South Dakota. On September 21, 2009, Dacotah Bank, the Prins, and the Mealys (acting on behalf of Investment Enterprises) signed a subordination agreement that modified the lien priorities, granting Dacotah Bank's loan superiority over Investment Enterprise's mortgage. The agreement contained a recital specifically listing a $325,000 promissory note as the debt secured by the mortgage. It did not mention any of the fifty-five promissory notes.

[¶7.] The Prins failed to make any payments on the promissory notes; however, the Mealys did not immediately attempt to enforce the debt. In early 2011, Terrence died of cancer. Several years later, on June 2, 2014, Bruce Prins met with two bankers (Dan Stein and Jonathan Holthe) acting on behalf of the Mealys to discuss the debt. Both submitted affidavits attesting that during the meeting, Bruce admitted he owed the Mealys money and promised to pay the debt. In February 2015, Patrick, the Mealys' son, and Mark Motz, a Prairie Sky hunting guide, met with Bruce. Patrick and Motz each executed affidavits stating that Bruce orally promised to transfer his buffalo, the personal property in the lodge, and the Prairie Sky name and business to the Mealys as partial payment on the

debt. Patrick indicated that they valued these assets at $130,000. No evidence suggests this transfer occurred.

[¶8.]    The Mealys filed a complaint on March 3, 2015, alleging breach of contract and the conversion of buffalo. They also brought an equitable claim for unjust enrichment and requested imposition of a constructive trust, accounting, and injunctive relief.[2] The Mealys did not attempt to foreclose on the mortgage. The Prins counterclaimed for conversion of personal and business property, misappropriation of a business opportunity, unjust enrichment, and trademark infringement. After litigation began, Bruce Prins created a document estimating his ownership in the buffalo herd from 2000 to 2015. As of 2014, Bruce believed he owned approximately 64% of the herd while the Mealys owned the remaining 36%.

[¶9.]    In August 2015, the Prins moved for partial summary judgment, asserting that many of the promissory notes were time-barred. They also attacked the mortgage's validity for failing to secure a debt because it did not list any of the promissory notes. The circuit court granted their motion in part, finding forty-eight of the fifty-five promissory notes time-barred by the statute of limitations. The court also concluded that the mortgage was void and unenforceable. It was undisputed that the remaining seven notes, all of which were demand notes, fell within a longer statutory period and remained timely.

[¶10.]    In preparation for trial, the Prins deposed the Mealys' buffalo expert, Tim Fraiser, and then moved to exclude his opinion regarding the ownership

---

2.    Because Terrence Mealy passed away in February 2011, his wife Loretta filed the lawsuit on her own behalf and as personal representative of Terrence's Estate.

percentages of the herd for failing to qualify as an expert on this topic. The circuit court granted the motion, excluding Fraiser's opinion on that subject because he lacked specialized accounting knowledge.[3] The Mealys did not include Fraiser on their witness list.

[¶11.]    A jury trial on the remaining legal and equitable claims commenced in November 2017. Fraiser did not take the stand at trial to discuss the ownership of the buffalo herd, and the Mealys did not hire another forensic accountant to review the numbers. Patrick and Loretta both responded to questions elicited by the Prins on cross-examination regarding whether a forensic accountant had evaluated the number of buffalo in the herd. Loretta testified that she did not hire a forensic accountant to assess ownership of the herd. Patrick testified about a "bison consultant" they hired from Texas. The Prins then requested a missing witness instruction because they believed Patrick and Loretta each alluded to opinions of Tim Fraiser, a witness that did not testify at trial. Over the Mealys' objection, the circuit court gave the instruction.

[¶12.]    At the conclusion of trial, both parties requested special verdict forms. The Prins's form required the jury to calculate prejudgment interest on the demand notes if they rendered a verdict for the Mealys. The Mealys' form, in contrast, did not address prejudgment interest because they believed the terms of the notes controlled the issue. The circuit court gave the jury the Prins's verdict form.

---

3.    Fraiser concluded that the Mealys owned 71% and the Prins owned 29% of the buffalo located on Prairie Sky Ranch.

[¶13.]     The jury returned a verdict for the Mealys in the sum of $196,000 on their breach of contract claim for the seven promissory notes not barred by the statute of limitations and determined the date on which prejudgment interest should accrue.  The jury rejected the Mealys' conversion claim regarding the buffalo and instead awarded the Prins $135,000 for their converted business property.  On the remaining equitable issue, the jury rendered an advisory verdict.  It awarded the Mealys $135,000 for unjust enrichment, and the circuit court adopted the recommendation.  Following the verdict, the Prins satisfied the judgment in full by paying the principal and interest as calculated from the dates set by the jury on the seven enforceable promissory notes.

[¶14.]     The Mealys appeal, raising several issues which we restate as follows:

1. Whether the circuit court erred by granting the Prins's motion for partial summary judgment.

2. Whether the circuit court erred by giving the jury a missing witness instruction.

3. Whether the circuit court erred by using the Prins's proposed special verdict form.

The Prins, by notice of review, contend that the circuit court erred by adopting the advisory jury's verdict awarding the Mealys $135,000 for unjust enrichment because the jury should not have been allowed to consider the forty-eight time-barred promissory notes when determining the Mealys' unjust enrichment claim.

### Analysis and Decision

**I.     Whether the circuit court erred by granting the Prins's motion for partial summary judgment.**

[¶15.]     The Mealys challenge the circuit court's order granting the Prins's motion for partial summary judgment.  The court, applying South Dakota law, concluded that forty-eight of the notes were barred by the statute of limitations and no rule applied to extend the statutory period.  It also concluded the mortgage was unenforceable because it failed to secure a valid debt.

[¶16.]     When summary judgment is entered based upon the statute of limitations, we engage in a burden-shifting analysis to determine whether judgment as a matter of law is proper.  *See Strassburg v. Citizens State Bank*, 1998 S.D. 72, ¶ 5, 581 N.W.2d 510, 513.  If the defendant "presumptively establishes the defense by showing the case was brought beyond the statutory period, the burden then shifts to the plaintiff to establish the existence of material facts in avoidance of the statute of limitations[.]"  *Id.*  "Generally, a statute of limitations question is left for the jury; however, deciding what constitutes accrual of a cause of action is a question of law and reviewed de novo."  *Rodriguez v. Miles*, 2011 S.D. 29, ¶ 7, 799 N.W.2d 722, 725.

[¶17.]     Both parties agree that despite the choice of law provision in the mortgage, South Dakota law applies when assessing the enforceability of the promissory notes.  Of the forty-eight notes involved, forty-five are "time notes" and three are "demand notes."[4]  The statute of limitations for a time note is six years.

---

4.    A time note has a fixed due date, which is determined at the time of execution.  SDCL 57A-3-108(b).  Demand notes, on the other hand, do not include a due date but are instead "payable at the will of the holder[.]"  SDCL 57A-3-108(a).

SDCL 57A-3-118(a). Demand notes, in contrast, fall under a ten-year statute of limitations if no demand for payment is made or the obligor fails to pay interest or principal for ten continuous years. SDCL 57A-3-118(b). The statute of limitations ran on the time notes between April 29, 2005 and December 21, 2012, and on the demand notes between April 16, 2012 and December 30, 2014. The Mealys filed their lawsuit March 3, 2015, well after expiration of all forty-eight notes. Once the Prins presumptively established that the forty-eight promissory notes were beyond the statutory period, the Mealys were obligated to show that genuine issues of material fact existed concerning the running of the statute of limitations.

[¶18.] The Mealys argue that the circuit court erred in failing to recognize that the 2009 subordination agreement, which references the mortgage but not the notes, revived the statute of limitations on the promissory notes by acknowledgement. Alternatively, the Mealys argue that the Prins's post-default conduct created questions of fact concerning waiver or estoppel of the statute of limitations on all notes precluding summary judgment.

### *Revival by acknowledgment.*

[¶19.] The Mealys instituted a breach of contract claim to recover on the promissory notes rather than foreclosing on the mortgage. Therefore, we need not address the validity of the mortgage beyond considering its impact on the Mealys' revival by acknowledgment claim.

[¶20.] SDCL 15-2-29 permits revival of a time-barred contract if a writing acknowledges the debt and is "signed by the party to be charged[.]"[5] Yet we will not declare a writing an acknowledgment "if there be anything in the terms of the writing which tend to repel such an inference or leave it in doubt." *Wipf v. Blake*, 72 S.D. 10, 12, 28 N.W.2d 881, 882 (1947). An acknowledgment "must be consistent with a promise to pay, unqualified, clear, plain, unambiguous, *and so distinct in its extent and form as to preclude hesitation* as to the debtor's meaning, and so as to enable the court to apply its terms as the debtor intended they should be applied." *Id.* at 12–13, 28 N.W.2d at 882 (emphasis added).

[¶21.] Applying this standard, the circuit court concluded that the subordination agreement did not revive the forty-eight promissory notes because the language of the agreement's recital clause "cast doubt on what debt [was] being described" by referencing the mortgage only as follows:

> WHEREAS Investment Enterprises, Inc. is the . . . holder of a
> certain note for Three Hundred Twenty-five Thousand
> Dollars . . . secured by a certain mortgage . . . made by
> Investment Enterprises, Inc., to Mortgagor, dated the 21st day
> of September, 2000 . . . .

The circuit court noted that the agreement subordinated only "a specific note worth $325,000" described within the mortgage rather than the "forty-eight promissory notes in dispute."

---

5.  SDCL 15-2-29 provides:

> No acknowledgment or promise is sufficient evidence of a new or
> continuing contract, whereby to take the case out of the operation of
> this chapter, unless the same be contained in some writing signed by
> the party to be charged thereby; but this section shall not alter the
> effect of any payment of principal or interest.

[¶22.]     The Mealys challenge this conclusion, arguing that the court erroneously relied on a recital clause rather than considering the operative portion of the subordination agreement.  They argue the agreement "clearly and unambiguously acknowledges the [m]ortgage, and therefore the debt owed under the notes" due to the provision of the agreement stating:

> Subordination.  Investment Enterprises . . . agrees with Dacotah Bank that the mortgage held by Investment Enterprises . . . dated September 21, 2000 is and shall continue to be subject and subordinate in lien to the mortgage . . . made by Dacotah Bank . . . .

[¶23.]     But "[a] subordination agreement is merely a contractual modification of the priorities that would otherwise exist."  Lary Lawrence, *Lawrence's Anderson on the Uniform Commercial Code* § 1-310:4 (3d. ed. 2018).  Its typical purpose is to contract for superiority among claims, not to delineate or acknowledge the exact debt or claim the subordinating creditor possesses.

[¶24.]     Although the language of a subordination agreement could include a promise to acknowledge debt otherwise extinguished by a statute of limitations, this particular agreement did not.  The subordination agreement was between Investment Enterprises, the Prins, and Dacotah Bank.  The Prins did not acknowledge any of the prior indebtedness owed to the Mealys under the prior promissory notes.  There was also no indication that the Prins were willing to accept liability for notes which were already time-barred, or otherwise extend the statute of limitations for any notes that were not yet time-barred.  The agreement simply states that the debt secured by the mortgage to Investment Enterprises, if any, holds a lower priority than the Prins's loan with Dacotah Bank.  Because the

subordination agreement does not indicate the Prins intended to "make a new contract to pay the debt" we cannot say its terms were "so distinct in [their] extent and form as to preclude hesitation as to the debtor's meaning[.]" *See Wipf*, 72 S.D. at 12–14, 28 N.W.2d at 882–83. Therefore, the subordination agreement did not revive or extend the statute of limitations on any of the debt held in the forty-eight notes.

### *Waiver or estoppel of the statute of limitations.*

[¶25.] In support of their alternative argument, the Mealys claim they have submitted genuine issues of material fact regarding the Prins's post-default conduct, which they argue precludes use of the statute of limitations defense. They contend the Prins have either waived or are estopped from asserting the defense because they: (1) acknowledged the debt many times through the years and made statements that they would repay it; and (2) executed the mortgage and subordination agreement. The Mealys also point to Bruce Prins's statements to Patrick, in which, according to the Mealys, he either promised to pay or made actual payments on the debt. The Mealys acknowledge that they "did not expressly couch their arguments [to the circuit court] in terms of waiver or estoppel[.]" However, they contend that our recent decision in *Work v. Allgier* allows consideration of their issues. 2018 S.D. 56, 915 N.W.2d 859. We disagree that *Allgier* applies.

[¶26.] In *Alliger*, we held that the statute of limitations is a personal defense that a defendant might be estopped from asserting based on his conduct. *Id.* ¶ 23, 915 N.W.2d at 864–65. However, we did not overrule our longstanding precedent

that legal theories must be raised before the circuit court to be considered on appeal. *See Lang v. Burns*, 77 S.D. 626, 631, 97 N.W.2d 863, 866 (1959).

[¶27.]     The Mealys failed to develop the equitable theories of waiver and estoppel before the circuit court. Instead, their evidence regarding the Prins's post-default conduct was submitted only to support completely distinct arguments, such as acknowledgment, partial payment, and equitable mortgage theories. Because we have no "order, ruling, or determination of the trial court" to review regarding these issues, we decline to address them. *See* SDCL 15-26A-7. The court did not err by granting partial summary judgment to the Prins.

## II.     Whether the circuit court erred by giving the jury a missing witness instruction.

[¶28.]     The Mealys claim the circuit court erred by giving a missing witness instruction adverse to them as a result of references Patrick and Loretta Mealy made at trial about their buffalo expert, Fraiser, and their decision not to hire a forensic accountant. The Mealys retained Fraiser to evaluate the buffalo herd. He issued a one-page report opining on ownership of the herd, concluding the Prins owned 29% and the Mealys owned 71%.

[¶29.]     Because the Prins successfully excluded Fraiser's testimony regarding these percentages with a pre-trial motion, the Mealys did not include Fraiser on their witness list or call him to testify at trial. Additionally, the Mealys did not hire an accountant to analyze the herd numbers. Nevertheless, on cross examination, the Prins elicited the following statements from Patrick:

> **Attorney:** Mealy, LLC could afford to hire someone . . . to look at Bruce's year by year [buffalo] count . . .
> **Patrick:** Yes.

> **Attorney:** Did you do that?
>
> **Patrick:** I don't know if we did . . . . [W]e had somebody look at it. And the guy thought it was horse pucky . . . so I didn't spend much time trying to unscramble the sheet[.]
>
> **Attorney:** Who's the person that said it was horse pucky?
>
> **Patrick:** Our [buffalo] consultant from Texas.
>
> **Attorney:** Is he going to be here testifying?
>
> **Patrick:** No.

Loretta was also asked about the ownership percentages on cross examination. She acknowledged that she could have hired an accountant to interpret the relative ownership percentages in the herd but testified that she did not do so. She did not mention Fraiser's involvement. Based on these exchanges, the court granted the missing witness instruction.[6]

[¶30.]     Because the "[circuit] court has discretion in the wording and arrangement of its jury instructions," we review its "decision to grant or deny a particular [jury] instruction under the abuse of discretion standard." *Vetter v. Cam Wal Elec. Coop., Inc.*, 2006 S.D. 21, ¶ 10, 711 N.W.2d 612, 615. Although circuit courts are granted latitude under this standard, they do not have "discretion to give

---

6.     Instruction 20[:] If a party has the power to produce a witness but fails to do so, you may infer that the testimony of that witness would not have been favorable to that party . . . only if you find the following[:]

    (1) The party, with exercise of reasonable diligence, could have produced the witness; and

    (2) A reasonable person in the same circumstances would have produced the witness if the party believed the testimony would be favorable; and

    (3) No reasonable excuse exists for the failure of the party to produce the witness; and

    (4) The witness was not equally available to the adverse party . . . .

-13-

incorrect, misleading, conflicting, or confusing instructions: to do so constitutes reversible error if it is shown not only that the instructions were erroneous, but also that they were prejudicial." *Id.* Prejudice occurs "when[,] in all probability[,] [the instructions] produced some effect upon the verdict and were harmful to the substantial rights of a party." *Id.*

[¶31.] A missing witness instruction allows the jury to draw an inference about why a knowledgeable witness is absent at trial. If such a witness is not called, the fact-finder may infer that his or her testimony would have been unfavorable to the party that failed to produce the witness. *See Rapid City v. Brown,* 252 N.W.2d 323, 325 (S.D. 1977). While such instructions are generally permitted, they "cannot fairly be made except under certain conditions[.]" *Id.* An instruction is appropriate, for instance, when the missing witness is unavailable to one of the parties. Notably, these instructions exist to curtail a party from hiding unfavorable evidence and are "open always to explanation by circumstances . . . [other] than the party's fear of exposure." *Id.*

[¶32.] The Mealys claim the circuit court erred because Fraiser's testimony was: (1) barred, rather than missing, because the court found most of his report inadmissible; and (2) equally available to the Prins through Fraiser's deposition transcript. Additionally, the Mealys argue allowing an instruction that would potentially benefit the Prins is inequitable because the Prins elicited the testimony. After all, the Mealys contend, the Prins never attempted to secure Fraiser's attendance at trial. They assert prejudice because, in their view, the instruction caused the jury to reject their conversion claim and diminish their unjust

enrichment award. The Prins defend the missing witness instruction by arguing Patrick interjected prejudicial information about Fraiser's inadmissible opinion. The Prins also contend no prejudice occurred because the instruction did not "sway the jury."

[¶33.]	As we have previously noted in *Brown*, a missing witness instruction is only appropriate when the witness's absence is not satisfactorily explained. *Id.* at 325. Missing witness instructions exist to "prevent the suppression of evidence," *see id.*, and may be appropriate when a party fails to call a witness with material information. Fraiser's main role in the Mealys' litigation strategy was to report his opinion regarding ownership of the buffalo. His absence from trial was not because the Mealys feared his testimony, but because the court precluded his opinion on this point.

[¶34.]	Further, Loretta's testimony that the Mealys could have hired a forensic accountant but chose not to do so was permissible testimony on cross examination and not grounds for a missing witness instruction. To hold otherwise would permit the instruction to be given any time a party elected not to hire an expert witness and was questioned about their decision. Therefore, allowing the jury to make an inference that Fraiser's testimony would have been unfavorable to the Mealys was erroneous.

[¶35.]	As to prejudice, from our review, the missing witness instruction in all probability affected the outcome of the Mealys' conversion and unjust enrichment claims. Evidence within the record—including pre-litigation correspondence between the parties and discrepancies between Bruce Prins's deposition and trial

testimony regarding the buffalo percentages—lends support to the Mealys' claim that they owned a larger portion of the herd.[7]  However, even if the jury accepted the Prins's assertion that the Mealys owned only 25% of the herd, neither party disputes that the Prins failed to pay the Mealys any of the proceeds from the buffalo sales between 2010 and 2015, which generated approximately $1.2 million in revenue.  Despite this evidence, the jury rejected the Mealys' conversion claim altogether and awarded just $135,000 for unjust enrichment—a sum well below 25% of $1.2 million.  We reverse and remand for a new trial on the Mealys' conversion and unjust enrichment claims.

### III.  Whether the circuit court erred by using the Prins's proposed special verdict form.

[¶36.]    The Mealys also challenge the circuit court's decision to use the Prins's proposed special verdict form.  If the jury found the remaining seven promissory notes enforceable against the Prins, the special verdict form required the jury to set the date on which prejudgment interest began accruing.  The jury found the notes

---

7.    Bruce acknowledged the discrepancy between his testimony at trial:

> **Q:** [Y]our [post-litigation] calculation [stated] you owned 244 buffalo versus Mr. Mealy's 163 buffalo at the end of 2007, right?
>
> **A:** Yes.
> * * * *
>
> **Q:** And your [deposition] testimony was that in 2008 . . .  you only owned 25 percent of the buffalo, correct?
>
> **A:** That was my testimony at that deposition, yes.
>
> **Q:** And [your post-litigation] production report shows that you . . . own 75 percent almost, right?
>
> **A:** Yes.
>
> **Q:** So it can't both be right, can it?
>
> **A:** That's right, somebody made a mistake.

enforceable, awarding $196,000 to the Mealys and assessing prejudgment interest on the entire sum as of January 2, 2008.

[¶37.] The Mealys argue the circuit court should have adopted their proposed special verdict form, which omitted calculation of prejudgment interest on the notes. The Mealys explain their form did not account for prejudgment interest because the terms of the notes already included the date of execution and the rate of interest per annum until the debt was paid. Although the Mealys acknowledge they did not specifically object to the interest calculation in the finalized verdict form, they argue the issue is preserved for appeal through submission of their own proposed verdict form and by their post-trial motion alerting the circuit court to the error. We review the decision to give a special verdict form under the abuse of discretion standard. *Miller v. Hernandez*, 520 N.W.2d 266, 270 (S.D. 1994). A circuit court abuses its discretion when exercising it "to an end or purpose not justified by, and clearly against, reason and evidence." *Id.* (citation omitted).

[¶38.] SDCL 21-1-13.1 provides in part: "Prejudgment interest on damages arising from a contract shall be at the contract rate, if so provided in the contract[.]" The Prins make no attempt to argue SDCL 21-1-13.1 does not apply. Instead, they claim the issue was not preserved for appeal because the Mealys' motion objecting to the calculation was filed after the jury rendered a verdict.

[¶39.] We have previously held that specialized "[v]erdict forms to be submitted to the jury should be treated in the same manner as jury instructions[.]" *Grynberg v. Citation Oil & Gas Corp.*, 1997 S.D. 121, ¶ 32, 573 N.W.2d 493, 503. Accordingly, "any errors of commission or omission in the verdict forms to be

submitted to the jury" should be objected to when settling instructions. *Id.* A party must object in a manner that "alert[s] the [circuit] court to the claimed error[.]" *Id.* ¶ 32, 573 N.W.2d at 504. Typically, the Mealys' failure to object to the error prior to submitting the verdict form to the jury would be fatal to consideration of the issue on appeal. However, in this instance, the Mealys neutralized the error by bringing the matter to the circuit court's attention in post-trial proceedings while it was still easily correctable. Calculation of prejudgment interest in accordance with the contract rate required no additional fact-finding by the jury. Therefore, we address the question.

[¶40.] Calculation of prejudgment interest is only a question of fact for the jury's consideration when the date of loss or damage is at issue. *See* SDCL 21-1-13.1. Here each note reflects the date of execution and the interest applicable to it. Therefore, the circuit court abused its discretion by submitting the issue of interest to the jury. We reverse and remand with direction to the circuit court to recalculate prejudgment interest based upon the terms of each promissory note.

### IV. Whether the circuit court erred by considering time-barred promissory notes when determining the Mealys' unjust enrichment claim.

[¶41.] By notice of review, the Prins contend the circuit court erred by accepting the advisory jury's verdict on the Mealys' unjust enrichment claim because it permitted the jury to consider the $295,000 debt described in the time-barred notes when fashioning the unjust enrichment award.[8] The Mealys refute

---

8. The parties agreed that the ten-year statute of limitations set forth in SDCL 15-2-8(4) applied to the Mealys' unjust enrichment claim.

this, arguing that the jury could have compensated them for either "the loan proceeds provided to [the Prins] over the years" *or* for "funds generated from the sale of the buffalo."

[¶42.]     The record does not permit a clear inference as to whether the jury considered the time-barred notes in reaching its advisory verdict.  However, given our decision to reverse the unjust enrichment award on a separate basis, we think it is useful to the circuit court on remand to clarify that the time-barred notes cannot be used to support an unjust enrichment award.

[¶43.]     The Prins statute of limitations defense does not work an injustice upon the Mealys because the Mealys once had a viable remedy at law that they declined to timely pursue.  "When there is a valid and enforceable contract . . . liability for compensation or other resolution of the breach is fixed exclusively by the contract." *Johnson v. Larson*, 2010 S.D. 20, ¶ 9, 779 N.W.2d 412, 416.  Absent fraud, bad faith, or similar theories, unjust enrichment claims are generally unavailable when a claimant has a "full, adequate, and complete" remedy available at law.  *See Holzworth v. Rother*, 78 S.D. 287, 291–92, 101 N.W.2d 393, 394–96 (S.D. 1960); *see also, e.g.*, *CMI Roadbuilding, Inc. v. Iowa Parts, Inc.*, 920 F.3d 560, 566 (8th Cir. 2019) (applying an analogous Iowa law).  The Mealys cannot unwind the clock now by using an unjust enrichment theory to maneuver around the legislatively prescribed limitations period.

**Conclusion**

[¶44.] We affirm the circuit court's order granting the Prins's motion for partial summary judgment on the forty-eight promissory notes. We also affirm the jury's $135,000 verdict for the Prins on their claim that the Mealys converted portions of their business property because neither party appealed this issue. However, a new trial on the Mealys' conversion and unjust enrichment claims is necessary because the court abused its discretion by giving a missing witness instruction at trial which in all probability was prejudicial to the substantial rights of the Mealys. We further hold that the circuit court erred by allowing the jury to determine the date to begin calculating interest on the enforceable promissory notes. We direct the circuit court to recalculate the interest based on the rates and effective dates provided in the notes.

[¶45.] Regarding the Prins's issue on notice of review, the court erred in allowing the jury to consider evidence of the time-barred notes when considering the Mealys' claims of unjust enrichment. Upon retrial, the jury must be instructed that it shall not reimburse the Mealys for the unenforceable notes as part of any award on the remaining claims. Additionally, if the parties elect to utilize an advisory jury, the court must enter findings of fact and conclusions of law consistent with *Granite Buick GMC, Inc. v. Ray* regardless of whether it accepts or rejects the jury's proposed verdict. 2014 S.D. 78, ¶ 15, 856 N.W.2d 799, 805. We affirm in part and reverse and remand in part for proceedings consistent with this opinion.

[¶46.] JENSEN and SALTER, Justices, GUSINSKY, Circuit Court Judge, and SEVERSON, Retired Justice, concur.

#28588, #28597

[¶47.]    GUSINSKY, Circuit Court Judge, sitting for GILBERTSON, Chief

Justice, disqualified.